# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Corbin R. Davis

FORD MOTOR COMPANY v DEPARTMENT OF TREASURY

Docket No. 146962. Argued April 2, 2014 (Calendar No. 1). Decided June 26, 2014.

Ford Motor Company brought an action in the Court of Claims against the Department of Treasury, seeking a refund of taxes it had paid under protest after defendant had determined that contributions made to the voluntary employees' beneficiary association (VEBA) trust fund plaintiff had established were taxable under the now repealed Single Business Tax Act (SBTA), MCL 208.1 *et seq*. The Court of Claims, Paula J. M. Manderfield, J., rejected plaintiff's claim that the VEBA contributions were not taxable under the SBTA and granted summary disposition to defendant. Plaintiff appealed and the Court of Appeals, ZAHRA, P.J., and WHITBECK and M. J. KELLY, JJ., reversed, holding that the VEBA contributions were not taxable under the SBTA. 288 Mich App 491 (2010). The Supreme Court denied defendant's application for leave to appeal. 488 Mich 1026 (2011). Plaintiff filed a motion in the Court of Claims to enforce the Court of Appeals' judgment. Before the motion was decided, the Treasury calculated that it owed plaintiff $15 million, rather than the $17 million that plaintiff claimed was due, and remitted $15 million to plaintiff. The approximate $2 million difference resulted in part from the parties' disagreement regarding the date that plaintiff filed its claim for a refund, thus triggering interest accumulation on the refund under MCL 205.30. The parties agreed that overpayment interest began accruing 45 days after the date that plaintiff provided the Treasury with adequate notice of a claim for refund of tax overpayment, but plaintiff argued that September 17, 2005, was the correct date to calculate the amount of overpayment interest because it was 45 days after plaintiff responded to the Treasury's August 3, 2005 Audit Determination Letter, while the Treasury argued that plaintiff had not provided adequate notice until December 13, 2006, when it filed its initial complaint in the Court of Claims. The Court of Claims ruled in plaintiff's favor, ordered the Treasury to pay additional overpayment interest, and directed the Treasury to pay costs and attorney fees to plaintiff. The Treasury appealed, and after reconsideration, in an unpublished opinion per curiam issued February 26, 2013 (Docket No. 306820), the Court of Appeals, WHITBECK, P.J., and FITZGERALD and BECKERING, JJ., reversed the trial court on the calculation of overpayment interest, vacated the award of attorney fees, and remanded to the trial court for further consideration of the attorney fees. The Supreme Court granted leave to appeal, asking the parties to address issues related to the calculation of interest on the refund. 495 Mich 861 (2013).

In an opinion by Justice CAVANAGH, joined by Justices KELLY, ZAHRA, and MCCORMACK, the Supreme Court *held*:

In order to trigger the accrual of interest on a tax refund under MCL 205.30, a taxpayer must pay the disputed tax, make a claim or petition for a refund, and file the claim or petition. Although a claim or petition need not take any specific form, it must clearly demand, request, or assert a right to a refund of tax payments made to the Department of Treasury that the taxpayer asserts are not due. Additionally, in order to file the claim or petition, a taxpayer must submit the claim to the Treasury in a manner sufficient to provide the Treasury with adequate notice of the taxpayer's claim. Because plaintiff's August 25, 2006 letter to the Treasury satisfied all the requirements of MCL 205.30, pursuant to MCL 205.30(3), interest began accruing on the refund 45 days later, on October 9, 2006.

1. Under MCL 205.30(1), the Treasury must credit or refund taxes erroneously collected. MCL 205.30(2) establishes what a taxpayer who paid a tax must do to obtain a refund of the amount paid. Therefore, in order to seek a tax refund, a taxpayer must first have paid the tax at issue.

2. A taxpayer's claim or petition for a refund under MCL 205.30(2) need not take any specific form as long as it clearly requests or demands that the Treasury return tax payments that the taxpayer asserts were not due. The Revenue Act does not define "petition" or "claim" as used in MCL 205.30; however, the relevant dictionary definitions of these terms indicated that a taxpayer must only demand, request, or assert an existing right to the refund.

3. Under MCL 205.30(3), interest must only be "added to the refund commencing 45 days after the claim is filed." While the Revenue Act does not define "filed," the relevant dictionary definitions indicated that, in order for a taxpayer's claim for refund to trigger the 45-day waiting period in MCL 205.30(3), the taxpayer must have submitted the claim to the Treasury in order to inform or notify the Treasury that the taxpayer believed it was entitled to a refund. This interpretation was consistent with the purpose of the 45-day waiting period between submission of the claim or petition and the start of interest accumulation on the refund, which was to allow the Treasury to investigate the taxpayer's claim for a refund and determine its validity before interest begins accumulating. In order to give effect to the legislative intent regarding the 45-day waiting period, the Treasury must be permitted to investigate the claim, and, in order to investigate the claim, the Treasury must have adequate notice of it.

4. Plaintiff's expression of disagreement with the Treasury's August 3, 2005 audit determination letter was not sufficient to constitute a claim or petition for refund of the money associated with that determination because it was not a demand for, request for, or assertion of a right to a refund, as MCL 205.30 requires. Likewise, plaintiff's November 17, 2005 request for an informal conference with the Treasury did not constitute a claim or petition for refund under MCL 205.30 because the request did not include a demand or request for or an assertion of a right to a refund. However, plaintiff's August 25, 2006 letter to the Treasury did constitute a claim or petition for refund under MCL 205.30 because, by referring to MCL 205.22 in expressing plaintiff's decision to institute a formal legal action in a court of law, the letter indicated that plaintiff was claiming a refund as contemplated by MCL 205.22.

5. Plaintiff's August 25, 2006 letter to the Treasury satisfied the requirement that the claim or petition for refund of the amount paid be filed because it was mailed to the Treasury

and, as evidenced by the Treasury's responsive letter dated September 15, 2006, the Treasury received it. Accordingly, all the requirements of MCL 205.30 were satisfied on August 25, 2006, and pursuant to MCL 205.30(3), interest began accruing on the refund 45 days later, on October 9, 2006.

Reversed and remanded to the trial court for further consideration of the attorney-fee issue.

Justice MARKMAN, joined by Chief Justice YOUNG and Justice VIVIANO, concurring in part and dissenting in part, agreed with Part III of the majority opinion, which held that in order to trigger the accrual of overpayment interest under MCL 205.30, a taxpayer must pay the disputed tax, make a claim or petition for a refund, and file the claim or petition. He dissented from the majority's conclusion in Part IV that plaintiff's August 25, 2006 letter to the Department of Treasury satisfied the statutory requirements of MCL 205.30, because it nowhere made a claim or petition for any right to a refund. He noted that by considering the letter's invocation of MCL 205.22 to constitute a claim for a refund, the majority had conflated that provision's two separate requirements that a plaintiff first pay the tax under protest and then claim a refund as part of the appeal, thereby rendering the requirement that there be a claim of a refund meaningless. He would have affirmed the result of the Court of Appeals and held that plaintiff did not satisfy the requirements of MCL 205.30 until it actually filed its complaint, which included a claim for a refund, in the Court of Claims on December 13, 2006.

©2014 State of Michigan

# Opinion

Chief Justice:          Justices:

Robert P. Young, Jr.    Michael F. Cavanagh
                        Stephen J. Markman
                        Mary Beth Kelly
                        Brian K. Zahra
                        Bridget M. McCormack
                        David F. Viviano

FILED June 26, 2014

STATE OF MICHIGAN

SUPREME COURT

FORD MOTOR COMPANY,

      Plaintiff-Appellant,

v                             No. 146962

DEPARTMENT OF TREASURY,

      Defendant-Appellee.

BEFORE THE ENTIRE BENCH

CAVANAGH, J.

In this case, we must determine what actions a taxpayer must take under MCL 205.30 of the Revenue Act to trigger the accrual of interest on a tax refund. We hold that in order to trigger the accrual of interest, the plain language of the statute requires a taxpayer to (1) pay the disputed tax, (2) make a "claim" or "petition" for a refund, and (3) "file" the claim or petition. Although a "claim" or "petition" need not take any specific form, it must clearly demand, request, or assert a right to a refund of tax payments made to the Department of Treasury that the taxpayer asserts are not due. Additionally, in order to "file" the claim or petition, a taxpayer must submit the claim to

the Treasury in a manner sufficient to provide the Treasury with adequate notice of the taxpayer's claim.

## I. FACTS AND PROCEDURAL HISTORY

This case began as a dispute between the parties regarding whether plaintiff owed tax under the now repealed Single Business Tax Act (SBTA) related to plaintiff's contributions to its Voluntary Employees' Beneficiary Association (VEBA) trust fund for 1997 through 2001.

On August 3, 2005, the Treasury sent an Audit Determination Letter informing plaintiff that the Treasury had determined that the VEBA contributions were taxable under the SBTA and, on the same day, plaintiff returned the letter to the Treasury after checking the box on the letter indicating that plaintiff "disagrees with this determination."[1] The Audit Determination Letter incorporated the Audit Report of Findings prepared by the Treasury, which acknowledged that plaintiff "disagrees with the audit determination" and "want[s] to request a hearing on the contested issue." During

_____

[1] The August 3, 2005 Audit Determination Letter stated:

> Michigan Department of Treasury[,] Audit Determination Letter[,] Single Business Tax[,] Taxpayer Name: FORD MOTOR COMPANY[,] Account No. 380549190[,] Audit Determination[,] Audit Period: 12/01/1997 to 12/31/2001[.] Net Tax Due $19,742,347[.] Interest 1,641,958[.] Penalty 0[.] Total Amount Due 21,384,305[.] The above determination is subject to final review and approval by the Michigan Department of Treasury. . . Taxpayer ___ agrees with this determination. ___ disagrees with this determination . . . Appeal Rights[.] If you disagree with this deficiency, please wait until you receive a notice of 'intent to assess' additional tax, penalty or interest and then file your written request for an informal conference (within 30 days after receipt) to the Michigan Department of Treasury[.]

2

the audit process, plaintiff provided the Treasury with detailed summaries of the amount of disputed tax for each tax year.

On November 17, 2005, plaintiff requested an informal conference with the Treasury regarding the determination that the VEBA contributions were taxable, among other issues. On August 25, 2006, plaintiff sent a letter to the Treasury withdrawing plaintiff's request for an informal conference, informing the Treasury that plaintiff intended to file a complaint in the Court of Claims, and requesting that the Treasury verify that the disputed tax liability was satisfied with unassigned funds that plaintiff had on deposit with the Treasury. Plaintiff's August 25, 2006 letter stated that application of plaintiff's funds on deposit with the Treasury should be viewed as a payment "under protest" under MCL 205.22. On September 15, 2006, the Treasury sent plaintiff a Final Audit Determination letter assessing plaintiff a tax liability approximately $20 million greater than the single business tax plaintiff previously paid. The Treasury also stated that plaintiff owed approximately $2 million in tax deficiency interest. On September 19, 2006, plaintiff informed the informal conference division that it was withdrawing its request.

On December 13, 2006, plaintiff filed a complaint in the Court of Claims asserting that the VEBA contributions were not taxable under the SBTA. That court rejected plaintiff's claim and granted summary disposition to the Treasury. Plaintiff appealed and the Court of Appeals reversed, holding that the VEBA contributions were not taxable under the SBTA. *Ford Motor Co v Dep't of Treasury*, 288 Mich App 491; 794 NW2d 357 (2010), lv den 488 Mich 1026 (2011).

3

On August 29, 2011, plaintiff filed a motion in the Court of Claims to enforce the Court of Appeals' judgment. Before the motion was decided, the Treasury calculated that it owed plaintiff $15 million rather than the $17 million that plaintiff claimed was due and, on September 19, 2011, the Treasury remitted $15 million to plaintiff. The approximate $2 million difference resulted in part from the parties' disagreement regarding the date that plaintiff filed its claim for a refund, thus triggering interest accumulation on the refund under MCL 205.30.

At a hearing, the parties agreed that overpayment interest began accruing 45 days after the date that plaintiff provided the Treasury with adequate notice of a claim for refund of tax overpayment. Regarding the difference between plaintiff's claim that it was entitled to a $17 million refund rather than the $15 million refund that the Treasury provided, plaintiff argued that September 17, 2005, was the correct date to calculate the amount of overpayment interest because it was 45 days after plaintiff responded to the Treasury's August 3, 2005 Audit Determination Letter, which plaintiff argued constituted adequate notice of a claim of refund. The Treasury argued that plaintiff did not provide adequate notice until December 13, 2006, when plaintiff filed its initial complaint in the Court of Claims and, therefore, the correct date for calculating the overpayment interest was 45 days after December 13, 2006.

The Court of Claims held in plaintiff's favor, ordered the Treasury to pay additional overpayment interest, and directed the Treasury to pay costs and attorney fees to plaintiff. The Treasury appealed, and after reconsideration, the Court of Appeals reversed the trial court on the calculation of overpayment interest, vacated the award of attorney fees, and remanded to the trial court for further consideration of the attorney

4

fees. *Ford Motor Co v Dep't of Treasury,* unpublished opinion per curiam of the Court of Appeals, issued February 26, 2013 (Docket No. 306820). We granted leave to appeal, asking the parties to address issues related to the calculation of interest on the refund. *Ford Motor Co v Dep't of Treasury*, 495 Mich 861 (2013).

## II. STANDARD OF REVIEW AND RULES OF STATUTORY INTERPRETATION

This case requires interpretation of the Revenue Act. Questions of statutory interpretation are reviewed de novo. *Malpass v Dep't of Treasury,* 494 Mich 237, 245; 833 NW2d 272 (2013). A trial court's factual findings are reviewed for clear error. *Detroit v Ambassador Bridge Co*, 481 Mich 29, 35; 748 NW2d 221 (2008). A factual finding is clearly erroneous "only when the reviewing court is left with the definite and firm conviction that a mistake has been made." *Id*. (citation omitted).

When interpreting statutes, "our primary task . . . is to discern and give effect to the intent of the Legislature." *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999) (citations omitted). To accomplish that task, we begin by examining the language of the statute itself. *Id*. (citation omitted). "If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written." *Id*. (citation omitted).

## III. ANALYSIS

Prior proceedings established that the Treasury erroneously assessed tax on plaintiff's contributions to its VEBA trust fund; thus, the only issue we consider today is the actions a taxpayer must take to trigger the accumulation of interest on a refund. The

Revenue Act, MCL 205.1 *et seq.*, governs refunds of erroneously assessed taxes. Specifically, MCL 205.30 provides:

> (1) The department shall credit or refund . . . taxes . . . erroneously assessed and collected . . . with interest . . . .
>
> (2) A taxpayer who *paid a tax* that the taxpayer claims is not due *may petition the department for refund of the amount paid* within the time period specified as the statute of limitations in [MCL 205.27a]. If a tax return reflects an overpayment . . . the declaration of that fact on the return constitutes a claim for refund. If the department agrees the claim is valid, the amount of overpayment, penalties, and interest shall be first applied to any known liability as provided in [MCL 205.30a] and the excess, if any, shall be refunded to the taxpayer or credited, at the taxpayer's request, against any current or subsequent tax liability. . . .
>
> (3) The department shall certify a refund to the state disbursing authority who shall pay the amount out of the proceeds of the tax in accordance with the accounting laws of the state. *Interest . . . shall be added to the refund commencing 45 days after the claim is filed* or 45 days after the date established by law for the filing of the return, whichever is later. Interest on refunds intercepted and applied as provided in [MCL 205.30a] shall cease as of the date of interception. . . . [Emphasis added.][2]

Thus, the statutory language establishes that, before interest begins accumulating on a tax refund, a taxpayer must: (1) pay the disputed tax; (2) make a "claim" or "petition;" and (3) "file" the claim or petition.

### A. A TAXPAYER MUST PAY THE DISPUTED TAX

The statutory language provides that the Treasury must credit or refund taxes "erroneously . . . *collected*." MCL 205.30(1) (emphasis added). Additionally,

---

[2] The Legislature amended MCL 205.30 in 2013 and 2014. 2013 PA 133; 2014 PA 3. Because the trial court decided the issues relevant to this case before the effective dates of the 2013 and 2014 amendments, we analyze this case under the statutory provisions in effect at the time of the trial court's decision.

6

MCL 205.30(2) establishes what a taxpayer "who *paid a tax*" must do to obtain a refund "of the *amount paid*." Emphasis added. Therefore, the statute makes clear what is already obvious: in order to seek a tax refund, a taxpayer must first pay the tax at issue.

### B. A TAXPAYER MUST "PETITION" FOR OR "CLAIM" A REFUND

If the taxpayer paid the tax, MCL 205.30(2) provides that a taxpayer may make a "petition" or "claim" for refund. The Revenue Act does not define "petition" or "claim" as used in MCL 205.30. Therefore, we presume that the Legislature intended for the words to have their ordinary meaning. MCL 8.3a. To assist in determining the ordinary meaning of the relevant words, we may consult a dictionary. *Klooster v City of Charlevoix*, 488 Mich 289, 304; 795 NW2d 578 (2011) (citation omitted). Relevant definitions of "claim" include: (1) "[t]o demand as one's due; assert one's right to," (2) "[a] demand for something as one's rightful due; affirmation of a right," *The American Heritage Dictionary of the English Language: New College Edition*, (3) "to ask for esp. as a right," and (4) "to assert to be rightfully one's own," *Merriam-Webster's Collegiate Dictionary* (11th ed). See, also, *Black's Law Dictionary* (9th ed) (defining "claim" in part as "[t]he assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional <the spouse's claim to half of the lottery winnings>" and "[a] demand for money, property, or a legal remedy to which one asserts a right . . . .").

Because the word "petition" is used as a verb within MCL 205.30(2), see *The American Heritage Dictionary of the English Language: New College Edition*

7

(explaining that when "petition" is used as a verb, it is "[o]ften followed by *for*"),[3] the relevant definitions include: (1) "[t]o ask for by petition; request formally," *The American Heritage Dictionary of the English Language: New College Edition*, and (2) "to make a request to: SOLICIT . . . to make a request; *esp* : to make a formal written request," *Merriam-Webster's Collegiate Dictionary* (11th ed). See, also, *Muldavin v Dep't of Treasury*, 184 Mich App 222, 226; 457 NW2d 50 (1990) (holding that under MCL 205.30(2) "tax overpayment would have to be *requested* either on a . . . tax return or by separate petition . . . .") (emphasis added).

Along with the relevant dictionary definitions, our order in *NSK Corp v Dep't of Treasury*, 481 Mich 884 (2008), provides further insight regarding the proper interpretation of terms "petition" and "claim" in MCL 205.30. In *NSK Corp*, the Treasury conducted an audit and subsequently sent an Audit Determination Letter informing the taxpayer that the taxpayer had overpaid its taxes.[4] The taxpayer responded to the letter by checking the box indicating that the taxpayer agreed with the Treasury's conclusion that a refund was owed in the amount the Treasury stated, but also checked the box on the letter indicating that the taxpayer disagreed with the Treasury's determination. Regarding that disagreement, the taxpayer included a written statement demanding interest on the refund under MCL 205.30. The Court of Appeals concluded

---

[3] As used in MCL 205.30(2), "petition" is followed by "for:" "A taxpayer who paid a tax that the taxpayer claims is not due may *petition* the department *for* refund . . . ." Emphasis added.

[4] The Audit Determination Letter in *NSK Corp* was the same as the Audit Determination Letter that the Treasury sent to plaintiff in this case.

8

that the taxpayer was entitled to interest, and that the triggering date for the 45-day waiting period under MCL 205.30(3) was the date that the Treasury sent the Audit Determination Letter to the taxpayer because that was when the Treasury "was aware that [the taxpayer] was entitled to a refund . . . ." *NSK Corp v Dep't of Treasury*, 277 Mich App 692, 698; 746 NW2d 886 (2008).

We rejected the Court of Appeals' conclusion with respect to the triggering date for accumulation of interest and instead held that MCL 205.30(2) "requires that the claim be one made by the taxpayer seeking a refund *either in a tax return or by separate request*." *NSK Corp*, 481 Mich at 884 (emphasis added). We concluded that the taxpayer in *NSK Corp* did not satisfy that requirement until it "responded . . . to the Treasury Department's Audit Determination Letter, agreeing with the amount of the refund, but demanding interest on the refund." *Id*.

Today, we reaffirm our interpretation of the statute in *NSK Corp*: we conclude that under MCL 205.30 a taxpayer can make a claim for a refund in the form of a tax return, as specifically permitted in MCL 205.30(2), or "by separate request." *NSK Corp*, 481 Mich at 884. Additionally, considering the relevant definitions of "claim" and "petition," we further conclude that a taxpayer is not required to make the claim on a specific Treasury form or in any other specific manner in order to satisfy MCL 205.30. Rather, a taxpayer must only "demand" or "request" the refund or "assert[] . . . an existing right" to the refund. For example, in *NSK Corp*, the taxpayer responded to the Treasury's Audit Determination Letter by adding information to the form and returning it to the Treasury.

Because the form, combined with the additional information explicitly demanded a refund and interest on the refund, it constituted a "claim" for a refund.[5]

Alternatively, a taxpayer could satisfy the statutory requirement by sending a separate letter to the Treasury, as long as the letter included the information necessary to constitute a definite demand for, request for, or assertion of a right to a refund. For example, the taxpayer in *Lindsay Anderson Sagar Trust v Dep't of Treasury*, 204 Mich App 128, 129; 514 NW2d 514 (1994), "wrote a letter to . . . [the] Treasury *requesting a refund of $156,961*, which the [taxpayer] claimed had been erroneously paid." Emphasis added. In short, because a taxpayer can demand, request, or assert a right to a refund by a multitude of methods, we conclude that the taxpayer's "claim" or "petition" need not take any specific form, so long as it clearly requests or demands that the Treasury return tax payments that the taxpayer asserts were not due.

### C. THE PETITION OR CLAIM MUST BE "FILED"

Finally, under MCL 205.30(3), interest must only be "added to the refund commencing 45 days after the claim is *file* . . . ." Emphasis added. As with the terms "claim" and "petition," the Revenue Act does not define "filed." Therefore, we again consult the dictionary for guidance in determining the ordinary meaning of the word. The relevant definitions of "file" include: (1) "to initiate (as a legal action) through proper formal procedure," (2) "to submit documents necessary to initiate a legal

---

[5] Although the taxpayer's claim for a refund in *NSK Corp* included a demand for interest on the refund, we clarify that the statutory language only requires a "claim" or a "petition" for a *refund*; it does not require a taxpayer to also "claim" or "petition" for interest itself in order to satisfy the requirements in MCL 205.30.

10

proceeding," *Merriam-Webster's Collegiate Dictionary* (11th ed), (3) "[t]o enter (a legal document, for example) on public record or official record," and (4) "[t]o apply: *file for a job*," *The American Heritage Dictionary of the English Language: New College Edition*.

Applying the definitions of "file" to the statute, we conclude that, in order for a taxpayer's "claim" for refund to trigger the 45-day waiting period in MCL 205.30(3), the taxpayer must "submit" the claim to the Treasury. The clear goal of "filing" the claim is to inform the Treasury that the taxpayer believes that the taxpayer is entitled to a refund. Indeed, the relevant dictionary definitions of "file" seem to imply that the purpose of the act of "filing" is to inform or notify others of something, whether it is the filer's intent to initiate a legal action, apply for a job, or engage in some other activity. Accordingly, as the Court of Appeals stated in *Sagar Trust*, 204 Mich App at 132, "a claim [for a refund] is *filed* when [the Treasury] receives *adequate notice of the claim*." Emphasis added. Indeed, if a taxpayer desires to obtain a refund and seeks to achieve that goal by making a "claim" or "petition" for the refund, logic requires that the taxpayer must notify the Treasury of the taxpayer's belief that it is entitled to a refund. Otherwise, the only entity that can grant the taxpayer's claim for a refund—the Treasury—will remain unaware that the taxpayer seeks a refund.

Likewise, interpreting the word "file" in MCL 205.30(3) as requiring a taxpayer to provide the Treasury with adequate notice of the taxpayer's claim or petition for a refund is consistent with the purpose of the 45-day waiting period between submission of the claim or petition and the start of interest accumulation on the refund. Specifically, MCL 205.30(2) states that a refund shall be paid "[i]f the [Treasury] department *agrees that the claim is valid . . . .*" Emphasis added. Therefore, MCL 205.30(3) creates a 45-

11

day waiting period so that the Treasury can investigate the taxpayer's claim for a refund and determine its validity before interest begins accumulating. In order to give effect to the legislative intent regarding the 45-day waiting period, the Treasury must be permitted to investigate the claim, and, in order to investigate the claim, the Treasury must have adequate notice of the claim, as the Court of Appeals held in *Sagar Trust*.

In summary, when the statute is read as a whole it is clear that, in order to trigger the 45-day waiting period before interest begins to accrue on a tax refund, a taxpayer must (1) have actually paid the tax at issue; (2) make a "petition . . . for" a refund or "claim for refund" by demanding, requesting, or asserting a right to a refund of tax payments that the taxpayer made to the Treasury return that the taxpayer asserts are not due; and (3) "file" the claim or petition by submitting it to the Treasury, thereby providing the Treasury with adequate notice of the taxpayer's claim for a refund.

## IV. APPLICATION

Applying the above framework to this case, we must first determine when plaintiff paid the disputed tax, because plaintiff could not "claim" or "petition" for a refund until after the disputed tax was paid. The record reflects that plaintiff kept unassigned funds on deposit with the Treasury and that plaintiff could assign those funds to its tax liabilities by directing the Treasury to apply the funds to specific tax liabilities. As relevant to this case, the record reflects that plaintiff had funds on deposit with the Treasury sufficient to pay the disputed tax liability no later than October 31, 2002, and that the Treasury acknowledged that plaintiff directed the Treasury to apply those funds to the disputed tax liability. In addition, during an October 6, 2011 hearing, the trial court

12

concluded that plaintiff had paid the disputed tax liability no later than October 31, 2002. Because the trial court's conclusion is supported by record evidence, we are not left with a definite and firm conviction that a mistake was made. Therefore, plaintiff satisfied the first requirement for obtaining a refund—paying the disputed tax—no later than October 31, 2002.

Next, we must determine whether plaintiff made a "claim" or "petition" for a refund. Plaintiff argues that it made a claim or petition for refund on August 3, 2005, when it responded to the Treasury's Audit Determination Letter by checking the box indicating that plaintiff "disagrees with this determination." Specifically, plaintiff contends that its expression of disagreement on August 3, 2005, coupled with the other information known to the Treasury as a result of the audit process, constitutes a claim or petition for refund.[6] Thus, the question is whether, when considered in context with the information known to the Treasury, expressing disagreement with the Treasury's tax assessment is sufficient to constitute a claim or petition for refund of the money associated with that determination.

To begin with, there is no dispute that plaintiff made clear its *disagreement* with the Treasury's audit determination regarding the taxability of the VEBA contributions

---

[6] Plaintiff argues that the Treasury knew that plaintiff (1) had filed returns stating the amount of tax plaintiff believed was due, (2) did not treat the VEBA contributions as taxable, (3) disagreed with the Treasury's conclusion that the VEBA contributions were taxable, and (4) had made previous payments sufficient to cover the disputed tax liability. Plaintiff also notes that, in a September 19, 2005 letter, the Treasury acknowledged that it was aware of plaintiff's disagreement with the tax assessment and argument regarding the VEBA contributions and encouraged plaintiff to pursue legal remedies.

13

and that subsequent court proceedings eventually proved plaintiff correct. Additionally, there may be some appeal to the seemingly logical conclusion that a taxpayer who expresses disagreement with a tax assessment is also likely to request a refund of funds paid to satisfy the disputed assessment. However logical that conclusion may appear, the statutory language nevertheless requires more of a taxpayer: the taxpayer must make a claim or petition for a refund, which, as we previously established, requires the taxpayer to explicitly demand, request, or assert a right to a refund. Although expressing disagreement with a tax assessment may *imply* that the taxpayer may seek a refund, an expression of disagreement alone is not a demand for, request for, or assertion of a right to a refund.

Indeed, although we approached the issue from the opposite direction in *NSK Corp* because in that case the Treasury determined that the taxpayer was entitled to a refund, we nevertheless reached the same conclusion. Specifically, we held that the 45-day waiting period before interest begins to accrue on a tax refund is not triggered merely because the Treasury is aware that the taxpayer is entitled to a refund. Although it is seemingly logical that a taxpayer entitled to a refund will indeed request that refund, we nevertheless concluded that the statutory language requires something more: the taxpayer must make a "separate request" for the refund. *NSK Corp*, 481 Mich at 884. Therefore, if the Treasury's actual knowledge that a taxpayer is entitled to a refund is not sufficient to trigger the 45-day waiting period under MCL 205.30(3), a taxpayer's mere expression of disagreement with a tax assessment cannot constitute a claim or petition for a refund sufficient to trigger the interest waiting period. Rather, the taxpayer must make a "separate request" that clearly demands, requests, or asserts a right to a refund. Because

14

plaintiff's August 3, 2005 response to the Audit Determination Letter did not make such a demand, request, or assertion, it was not a "claim" for a refund under MCL 205.30.

We also asked the parties to address whether plaintiff's November 17, 2005 request for an informal conference with the Treasury constituted a claim or petition for refund under MCL 205.30. Although a request for an informal conference could potentially constitute a claim or petition for a refund under the statutory language if the request includes a demand or request for or an assertion of a right to a refund, we conclude that plaintiff's request for an informal conference in this case did not make such a demand, request, or assertion.

First, nowhere in the request for an informal conference did plaintiff expressly demand, request, or assert a right to a refund of the VEBA-contribution tax that plaintiff paid. Rather, the request for an informal conference only expressed plaintiff's disagreement with the result of the Treasury's audit. In fact, the request for an informal conference stated that plaintiff "will be working with the [Treasury's] audit team to narrow the issues in dispute." Therefore, plaintiff's request for an informal conference seems to indicate that plaintiff believed that the disagreement could be resolved by further negotiations between the parties rather than a claim or petition for refund. Second, plaintiff's request for an informal conference listed "the most material items" with which plaintiff disagreed, which included issues that do not form the basis for plaintiff's refund associated with its VEBA contributions. Therefore, because the request for an informal conference addressed multiple issues, it did not indicate that plaintiff sought a refund for the tax associated with the VEBA contribution. Rather, the request for an informal conference merely listed multiple points of disagreement. Accordingly,

15

we conclude that the request for an informal conference was not a claim or petition for refund for purposes of MCL 205.30.

Next, we consider whether plaintiff's August 25, 2006 letter to the Treasury constituted a claim or petition for refund under MCL 205.30. The August 25, 2006 letter withdrew plaintiff's request for an informal conference and informed the Treasury that plaintiff would file an action in the Court of Claims. The letter stated that plaintiff's prior payment of the tax assessment associated with plaintiff's VEBA contributions "should be viewed as a payment under protest within the meaning of MCL 205.22."

Although a taxpayer need not file a lawsuit under MCL 205.22 in order to make a "claim" or "petition" for a refund, we conclude that the reference to this statute in plaintiff's August 25, 2006 letter constituted a claim or petition for refund under MCL 205.30. By referring to MCL 205.22 in expressing plaintiff's decision to institute a formal legal action in a court of law, the August 25, 2006 letter indicated that plaintiff was at that time "claim[ing] a refund" as distinctly contemplated by MCL 205.22.[7] In other words, by notifying the Treasury that plaintiff would resolve the dispute in the Court of Claims pursuant to MCL 205.22, the August 25, 2006 letter asserted a right to a refund by affirmatively notifying the Treasury that plaintiff was making what MCL 205.22 itself terms a "claim" for refund.[8] Therefore, plaintiff's August 25, 2006

---

[7] Specifically, under MCL 205.22(2), in order to pursue an appeal to the Court of Claims, plaintiff was required to "first pay the tax, including any applicable penalties and interest, under protest and *claim a refund* as part of the appeal." MCL 205.22(2) (emphasis added).

[8] The dissent accurately concludes that MCL 205.22(2) imposes two requirements that a taxpayer must satisfy in order to appeal a tax assessment in the Court of Claims: a

16

letter satisfied the second requirement necessary to trigger the 45-day waiting period before interest begins to accrue under MCL 205.30: plaintiff made a "claim" or "petition" by informing the Treasury that it intended to file suit in the Court of Claims pursuant to the procedures delineated in MCL 205.22.

Finally, we must determine whether plaintiff's August 25, 2006 letter satisfied the requirement that the claim or petition for refund of the amount paid be "filed." As previously discussed, in order to "file" the claim, a taxpayer must provide the Treasury with adequate notice by "submit[ting]" the claim to the Treasury. The August 25, 2006 letter satisfied that requirement because plaintiff mailed the letter to the Treasury, and, as

taxpayer must pay the disputed tax under protest and claim a refund as part of the appeal to the Court of Claims. The dissent also correctly concludes that a taxpayer may pay the disputed tax "under protest" and "claim a refund as part of the appeal" in a single action. In fact, the dissent expressly agrees that plaintiff could satisfy both the requirement to pay under protest and the requirement to claim a refund *in a single letter*.

Thus, our only disagreement with the dissent arises from our interpretation of plaintiff's August 25, 2006 letter: we interpret plaintiff's August 25, 2006 letter to do precisely what the dissent correctly recognizes is permissible. First, plaintiff informed the Treasury that it was paying the disputed VEBA contribution tax assessment "under protest," a conclusion with which the dissent agrees. Second, we conclude that by informing the Treasury that plaintiff would file an action in the Court of Claims and referring to MCL 205.22, plaintiff *asserted a right* to a refund, which, as previously discussed, constitutes a claim or petition for a refund under MCL 205.30. Accordingly, contrary to the dissent's contention, we do not merely treat plaintiff "as if" it made a claim or petition in its August 25, 2006 letter—plaintiff actually did so by affirmatively notifying the Treasury that it was asserting its right to a refund by undertaking formal legal action. The fact that plaintiff *again* claimed a refund in its complaint does not preclude the August 25, 2006 letter from constituting a claim or petition for a refund as required by MCL 205.30. To conclude otherwise would require a taxpayer to use the magic words "refund" and "claim" or "petition" in order to satisfy MCL 205.30, which would be inconsistent with our prior conclusion that a taxpayer's "claim" or "petition" need not take any specific form, a conclusion with which the dissent agrees.

17

evidenced by the Treasury's responsive letter dated September 15, 2006, the Treasury received it. See *Sagar Trust*, 204 Mich App at 132 (holding that the Treasury had adequate notice of the taxpayer's claim and the claim was therefore "filed" on the date that the taxpayer submitted a letter requesting a refund). Accordingly, all the requirements of MCL 205.30 were satisfied on August 25, 2006, and pursuant to MCL 205.30(3), interest began accruing on the refund 45 days later, on October 9, 2006.

## V. CONCLUSION

We hold that, in order to satisfy the requirements of MCL 205.30 and trigger the 45-day waiting period before interest begins to accrue on a tax return, a taxpayer must (1) pay the disputed tax, (2) make a "claim" or "petition," and (3) "file" the claim or petition. Although a "claim" or "petition" need not take any specific form, it must clearly demand, request, or assert a right to a refund. In order to "file" the claim or petition, a taxpayer must submit the claim to the Treasury, thereby providing the Treasury with adequate notice of the taxpayer's claim.

Because the Court of Appeals erroneously concluded that plaintiff did not satisfy the requirements of MCL 205.30 until it filed its complaint in the Court of Claims on December 13, 2006, we reverse the judgment of the Court of Appeals in part and instead hold that plaintiff satisfied all of the statutory requirements on August 25, 2006. We remand to the trial court for further consideration of the attorney-fee issue. We do not retain jurisdiction.

Michael F. Cavanagh
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack

18

STATE OF MICHIGAN

SUPREME COURT

FORD MOTOR COMPANY,

        Plaintiff-Appellant,

v                                 No. 146962

DEPARTMENT OF TREASURY,

        Defendant-Appellee.

_____

MARKMAN, J. (*concurring in part and dissenting in part*).

I concur with the majority's analysis of the law in Part III of the opinion. However, I write separately because I do not believe the majority properly applies its own test in concluding that plaintiff's August 25, 2006 letter to the Department of Treasury satisfied the statutory requirements of MCL 205.30. Specifically, I disagree with its conclusion that, by virtue of this letter, "plaintiff made a 'claim' or 'petition' [for a tax refund] by informing the Treasury that it intended to file suit in the Court of Claims pursuant to the procedures delineated in MCL 205.22." Therefore, I respectfully dissent from that portion of the opinion. I would instead affirm the result of the Court of Appeals and hold that plaintiff did not satisfy the requirements of MCL 205.30 until it actually filed its complaint in the Court of Claims on December 13, 2006.

The instant appeal stems from an earlier dispute regarding whether plaintiff Ford Motor Company owed tax under the Single Business Tax Act (SBT) relating to its contributions to its Voluntary Employees' Beneficiary Association (VEBA) trust fund for the tax years 1997 through 2001. After auditing plaintiff, the Department of Treasury

concluded that VEBA contributions were taxable and assessed taxes accordingly. Although plaintiff repeatedly disagreed with the department's conclusion that VEBA contributions were taxable, and therefore disagreed with the amount that the audit determined it owed, plaintiff eventually paid the amount assessed by the department "under protest" with funds that were at that time being held on deposit by the department. Plaintiff subsequently challenged the taxability of VEBA contributions, and the Court of Appeals ultimately held that these were not taxable under the SBT, meaning that plaintiff was due a refund. *Ford Motor Co v Dep't of Treasury*, 288 Mich App 491; 794 NW2d 357 (2010), lv den 488 Mich 1026 (2011). The issue for purposes of this appeal concerns the proper amount of this refund, as the parties disagree about the date on which plaintiff filed its claim for a refund and thus triggered interest on the refund under MCL 205.30.

MCL 205.30 provides:

> (1) The department shall credit or refund . . . taxes . . . erroneously assessed and collected . . . with interest . . . .

> (2) A taxpayer who paid a tax that the taxpayer claims is not due may *petition* the department for refund of the amount paid within the time period specified as the statute of limitations in [MCL 205.27a]. If a tax return reflects an overpayment . . . the declaration of that fact on the return constitutes a claim for refund. If the department agrees the claim is valid, the amount of overpayment, penalties, and interest shall be first applied to any known liability as provided in [MCL 205.30a] and the excess, if any, shall be refunded to the taxpayer or credited, at the taxpayer's request, against any current or subsequent tax liability. . . .

> (3) The department shall certify a refund to the state disbursing authority who shall pay the amount out of the proceeds of the tax in accordance with the accounting laws of the state. Interest . . . shall be added to the refund commencing 45 days after the *claim* is filed or 45 days after the date established by law for the filing of the return, whichever is later. Interest on refunds intercepted and applied as provided in

2

[MCL 205.30a] shall cease as of the date of interception . . . . [Emphasis added.]

The majority appropriately concludes that, in order to trigger the accrual of overpayment interest under this statute, a taxpayer must: "(1) "pay" the disputed tax, (2) make a "claim" or "petition" for a refund, and (3) "file" the claim or petition."[1]

To satisfy the second requirement of this test, the majority concludes that plaintiff made a "claim or petition" for a refund in an August 25, 2006 letter sent to the department. That letter informed the department that plaintiff no longer wished to proceed with an informal conference that had previously been scheduled, that it would file an action in the Court of Claims asserting that VEBA contributions were not taxable, and that plaintiff was paying the assessed tax on its VEBA contributions "under protest within the meaning of MCL 205.22."[2] However, this letter cannot be best understood as constituting a "claim or petition" for a refund for purposes of MCL 205.30, quite simply because it nowhere "claims or petitions" any right to a refund. That is, while the letter did request that the audit deficiency be satisfied with funds held "on deposit," and that

---

[1] The majority, not unreasonably, relies on dictionary definitions to conclude that to make a "claim" or "petition" for a refund, a taxpayer must "demand, request, or assert" such a right. While I do not quarrel with these definitions, as I agree it is useful in the course of interpretation to examine the ordinary meanings of terms used in a statute, I believe that the words actually chosen by the Legislature-- "claim" and "petition"-- are sufficiently clear to render unnecessary repeated references to their synonyms.

[2] Specifically, the letter stated "[i]t is our intent to withdraw our case from Informal Conference and file an action with the Court of Claims on the unresolved issues. Therefore, we are requesting that the audit deficiency, together with the applicable interest, be satisfied with the amounts currently being held by the Department 'on deposit.' The application of the amounts on deposit to the audit deficiencies should be viewed as a payment under protest within the meaning of MCL 205.22."

3

this be viewed as a "payment under protest," plaintiff (a) nowhere asked for its money back; (b) nowhere made any apparent demand that the department return funds that rightfully belonged to plaintiff; (c) nowhere asserted that it believed it was entitled to a refund; and (d) nowhere even alluded to, or referred to, a refund. While the letter may well *imply* that plaintiff intended to seek a refund-- as it might logically follow that any taxpayer who "pays under protest" desires the return of his or her payments-- by the majority's own language, a mere "implication" does not satisfy the requirement that the taxpayer "claim or petition" for a refund. *Ante* at 14 ("Although expressing disagreement with a tax assessment may imply that the taxpayer may seek a refund, an expression of disagreement alone is not a demand for, request for, or assertion of a right to a refund."). The requirements set forth in MCL 205.30 are not complicated; a taxpayer either makes the "claim or petition" for a refund, or it does not. It is not up to the department to attempt to read the taxpayer's mind, or to parse the taxpayer's language and actions with a fine comb, or to assess the totality of surrounding circumstances in order to surmise what was within the taxpayer's contemplation. If there is a "claim or petition" (a "demand, request, or assertion") for a refund, the taxpayer has satisfied the statute; if there is not, the taxpayer has not. The law could not be more clear or more straightforward. Given plaintiff's failure in any way to make a "claim or petition" for a refund in its August 25, 2006 letter, I find the conclusion inescapable that it did not satisfy the second requirement of the statute on that date.

To support its contrary conclusion, the majority relies on plaintiff's invocation of MCL 205.22 in its letter. This provision specifies that, "[i]n an appeal to the court of claims, the appellant shall first pay the tax, including any applicable penalties and

4

interest, under protest *and* claim a refund as part of the appeal." [Emphasis added.] According to the majority, because MCL 205.22 itself requires a claim for a refund, plaintiff's reference to this statute satisfied the "claim or petition" requirement of MCL 205.30, as such reference "affirmatively notif[ied] the Treasury that plaintiff was making what MCL 205.22 itself terms a 'claim' for refund." However, even if a taxpayer *could* affirmatively assert a "claim or petition" for a refund by referring to another statute, plaintiff did not do so by making a "payment under protest" while invoking MCL 205.22. This is because MCL 205.22 clearly differentiates between a payment under protest and a claim for a refund. That is, the taxpayer must *first* "pay the tax . . . under protest," and then, *secondly*, "claim a refund as part of the appeal." MCL 205.22(2). By concluding that the August 25, 2006 letter constituted a claim for a refund on the basis of the invocation of MCL 205.22, the majority conflates these two distinct statutory requirements. If plaintiff's payment under protest *itself* constituted the claim for a refund for purposes of MCL 205.30, the second requirement of MCL 205.22-- that there be a "claim [of] a refund"-- would be rendered utterly meaningless in contravention of the rule that "[i]n interpreting a statute, we [must] avoid a construction that would render part of the statute surplusage or nugatory." *People v McGraw*, 484 Mich 120, 126; 771 NW2d 655 (2009). The majority also fails to recognize that because MCL 205.22(2) states that a claim must be made "as part of the appeal" following the payment under protest, when plaintiff stated that it was paying "under protest within the meaning of MCL 205.22," the department had every reason based on the language of the statute to believe that the

5

August 25, 2006 letter was not a claim for a refund, but that the claim would be *forthcoming* as part of the appeal.[3] In short, the majority treats plaintiff *as if* it had made a "claim or petition" for a refund in its August 25, 2006 letter, when it did not actually do so, based exclusively on plaintiff's invocation of a statute that itself logically suggests that plaintiff had *yet* to make such a "claim or petition."[4]

By concluding that the August 25, 2006 letter constituted a "claim or petition" for a refund for purposes of MCL 205.30, the majority injects unnecessary uncertainty into its own test by suggesting to future taxpayers that they need not make an actual "claim or petition" for a refund to trigger the accrual of interest under MCL 205.30, but that some uncertain aggregation of other statements and actions might suffice if they come "close

---

[3] Because the August 25, 2006 letter did not itself claim or petition for a refund, but indicated only that plaintiff intended prospectively to file a lawsuit to pursue unresolved issues, the majority holds that the department should have acted not on an *extant* "claim or petition" for a refund, but on a mere intimation of what plaintiff *later* intended to do.

[4] We agree with the majority that a taxpayer may pay the disputed tax "under protest" and make a "claim or petition" for a refund in a "single action." Consistent with the majority's conclusion that the claim for a refund need not take any specific form, nothing precluded plaintiff from making a claim for a refund in the August 25, 2006 letter, in *addition* to its invocation of MCL 205.22. Indeed, plaintiff could without difficulty have made a "claim or petition" for a refund in the very same *sentence* as its payment under protest by including some type of a "demand, request, or assertion" of a right to a refund. Nothing in the statute prohibits such a "dual purpose" letter. However, given the absence of such a "claim or petition" in the letter, the department did not act unreasonably in its assumption that, consistent with MCL 205.22, plaintiff's claim would be *forthcoming*. Consequently, our conclusion that plaintiff's August 25, 2006 letter did not itself constitute a "claim or petition" for a refund does not "require a taxpayer to use the magic words 'refund' and 'claim' or 'petition' in order to satisfy MCL 205.30," but only requires a taxpayer to make some form of the very "petition or claim" ("demand, request, or assertion") required by the majority itself. No "magic words" are necessary, but a communication of the type described by the statute *is* necessary.

6

enough" to constituting a "claim or petition." After all, if plaintiff's failure to actually "claim or petition" is to be disregarded, its actions effectively will establish a new threshold for satisfying MCL 205.30, and it will not be at all surprising when the next taxpayer's actions which approximate, but fall slightly short of actual compliance with this *new* threshold, are also viewed as being "close enough" to satisfy MCL 205.30.

Because I agree with the majority's analysis that in order to trigger the accrual of interest for purposes of MCL 205.30 a taxpayer must "make a "claim" or "petition" for a refund," I concur in Part III of the majority opinion; however, because I disagree with the majority that plaintiff made such a "claim or petition" in its August 25, 2006 letter, I dissent from that portion of Part IV of the majority opinion. I would instead hold that plaintiff satisfied the requirements of MCL 205.30 when it filed its complaint, which included a claim for a refund, in the Court of Claims on December 13, 2006. In that document, plaintiff asked the court to "order a refund in excess of $12,323,625 for the Single Business Taxes paid under protest by Ford . . . ." Accord *NSK Corp v Dep't of Treasury*, 481 Mich 884 (2008) (taxpayer made a claim for a refund for purposes of MCL 205.30, not when department knew that taxpayer was entitled to a refund, but only when taxpayer made an affirmative request for such refund). Therefore, I would affirm the result of the Court of Appeals for the reasons stated in Part III of the majority opinion and in this dissent.

Stephen J. Markman
Robert P. Young, Jr.
David F. Viviano

7