# STATE OF MICHIGAN

# COURT OF APPEALS

---

TERIDEE LLC, JOHN F. KOETJE TRUST, and
DELIA KOETJE TRUST,

        Plaintiffs-Appellees,

v

CHARTER TOWNSHIP OF HARING and
TOWNSHIP OF CLAM LAKE,

        Defendants-Appellants.

UNPUBLISHED
December 8, 2015

No. 324022
Wexford Circuit Court
LC No. 2013-024803-CH

---

Before: OWENS, P.J., and MURPHY and HOEKSTRA, JJ.

PER CURIAM.

Defendants, Clam Lake Township and Haring Charter Township, appeal as of right an order entered by the trial court, which granted plaintiffs summary disposition pursuant to MCR 2.116(C)(10) and (I)(2), and declared void defendants' agreement to conditionally transfer property, known as the "transferred area." We affirm.

This case involves 1984 PA 425, MCL 124.21 *et seq.* (Act 425), which enables two local units of government, such as defendants, to conditionally transfer property by written agreement for the purpose of economic development projects. Collectively, plaintiffs own approximately 140 acres of vacant land in Clam Lake Township, which they intend to develop into a mixed-use development that would include retail stores, a hotel, a restaurant, and other commercial entities. At the time the complaint was filed, the property was zoned by Wexford County. In June 2011, plaintiffs sought to annex their property to the city of Cadillac to gain access to the city's water and sewer services, which are located within one-quarter mile from the property. According to plaintiffs, defendants did not have the infrastructure or were unable to provide the property with public water and sewer services in a timely manner. Defendants opposed the annexation.

In October 2011, defendants entered into an Act 425 agreement to conditionally transfer property, which most significantly included all of plaintiffs' property. This is of significance to plaintiffs because while an Act 425 agreement is in effect, annexation cannot occur. MCL 124.29. Plaintiffs brought an action against defendants in circuit court challenging the agreement, which was dismissed on summary disposition because the circuit court determined that the State Boundary Commission (SBC) had primary jurisdiction. The SBC ultimately determined that the agreement was not executed for the purpose of promoting economic

-1-

development, as defined by Act 425, but rather to bar plaintiffs' annexation petition. Accordingly, the SBC determined that the agreement was invalid. For other reasons, the SBC also did not approve plaintiffs' annexation petition.

Plaintiffs filed a second annexation petition on June 5, 2013. Meanwhile, defendants entered into a new Act 425 agreement regarding the same property involved in the first agreement, which was approved on May 8, 2013, and became effective June 10, 2013. Plaintiffs alleged that although the agreement proposed a mixed-use development, the development restrictions and regulations in the agreement were so strict that they effectively restricted any reasonable commercial development. Plaintiffs alleged that the agreement was a second attempt to prevent plaintiffs' property from being annexed to Cadillac.

Consequently, plaintiffs filed the present action seeking two counts of declaratory relief. In Count I, plaintiffs requested that the trial court declare the agreement invalid because it was executed for an improper purpose and therefore did not comply with the requirements of Act 425. In Count 2, plaintiffs requested that the trial court declare the agreement void against public policy because it binds the current and future zoning boards of Haring Charter Township to rezone the transferred area to the rezoning requirements set forth in the agreement, which plaintiffs argued divests the township, by contract, of its legislative zoning authority.

Defendants moved for summary disposition under MCR 2.116(C)(8) and (C)(10), arguing that both counts should be dismissed because the SBC had primary jurisdiction to rule on the validity of the agreement under Act 425. Defendants also argued that Count II should be dismissed because the agreement did not divest Haring Charter Township of its legislative zoning authority.

The trial court dismissed Count I, finding that the SBC had primary jurisdiction to determine the validity of the agreement, specifically whether it complied with the requirements of Act 425. As to Count II, the trial court denied summary disposition, finding that discovery was necessary to evaluate recent amendments to the agreement and to determine whether (1) defendants were carrying out the agreement in a way that did not divest the township of its legislative zoning authority, and (2) whether defendants could sever the allegedly invalid rezoning provisions of the agreement to make the balance of the agreement enforceable.

Following discovery, the parties filed cross-motions for summary disposition. The trial court determined that the agreement divested Haring of its legislative zoning authority, which made the contract void. It also determined that the unlawful provisions were central to the agreement and could not be severed. Consequently, defendants claimed this appeal.

Defendants first argue on appeal that the trial court erred in determining that the Act 425 agreement contracted away Haring's legislative zoning authority and was therefore void. We disagree. The parties do not contest the principle of law that a township board may not contract away its legislative powers, which includes its power to zone and rezone property. *Inverness Mobile Home Community, Ltd v Bedford Twp*, 263 Mich App 241, 247-248; 687 NW2d 869 (2004). Rather, they argue whether the plain language of the agreement actually contracts away Haring's zoning power.

We review de novo a trial court's ruling on a motion for summary disposition, "viewing the evidence in the light most favorable to the nonmoving party." *Joliet v Pitoniak*, 475 Mich 30, 35; 715 NW2d 60 (2006). Issues of contract interpretation are questions of law that we also review de novo. *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008).

Contrary to defendants' argument, the parties' intent is not controlled by how they applied the agreement, by their testimony, or by extrinsic evidence, such as the concurring resolutions the townships passed. Rather, the parties' intent is determined "by examining the language of the contract according to its plain and ordinary meaning." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 174; 848 NW2d 95 (2014). "In doing so, we avoid an interpretation that would render any portion of the contract nugatory." *Id.* A court's "primary task" in interpreting a contract is to "give effect to the parties' intention at the time they entered into the contract." *Id.* Further, a contract is to be construed as a whole, and all its parts are to be harmonized so far as reasonably possible. *Comerica Bank v Cohen*, 291 Mich App 40, 46; 805 NW2d 544 (2010) (citation omitted). "[C]ontractual terms must be construed in context and in accordance with their commonly used meanings." *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 294; 778 NW2d 275 (2009). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written because an unambiguous contract reflects the parties' intent as a matter of law." *Id.* at 292.

Keeping in mind the principles discussed above, we conclude that the plain language of the agreement contracts away Haring's zoning authority over the undeveloped property by providing how Haring must zone the property. The parties specifically provided how Haring was to rezone the transferred area once the agreement became effective. First, the agreement specifically requires that the "portions of the Transferred Area that are already developed for residential housing shall be zoned in a Haring zoning district that is comparable to the existing County zoning and existing land use." This clearly contracts away Haring's zoning power. It requires Haring to rezone the residential portion of the transferred area to one of its comparable zoning districts and does not give Haring any discretion to leave the area zoned by the county or rezone it to a district it prefers.

Second, the agreement specifically requires that the undeveloped portion of the transferred area

> shall be rezoned, upon application of the property owner(s), to a planned unit development ("PUD") district that permits mixed commercial/residential use; provided, however, that Haring shall not consider a PUD rezoning application for this portion of the Transferred Area until (i) it has adopted provisions in its zoning ordinance that allow mixed-use commercial/residential PUDs, and which require that such PUDs comply with the following minimum requirements, and (ii) the property owner(s) have submitted an application that complies with the following minimum requirements.

This also clearly contracts away Haring's zoning power. It requires Haring to adopt into its zoning ordinance the minimum zoning requirements provided in the agreement before it can even consider a property owner's application for development.

Further, section V of the minimum zoning requirements, which Haring is directed to adopt into its ordinance, provides that a "PUD plan shall be reviewed in accordance with, and shall otherwise comply with, the PUD regulations of the Haring Township Zoning Ordinance, to the extent that those regulations are not inconsistent with the above minimum requirements. Where the above regulations are more stringent, the more stringent regulations shall apply." Defendants argue on appeal that this provision merely provides that any development plan submitted must comply with Haring's general PUD regulations, but if the minimum requirements of the agreement that Haring initially adopted into its zoning ordinance for the transferred area were more stringent than the general PUD regulations, the more stringent regulations shall apply. This, however, does not help defendants. This provision is simply reiterating that Haring is to apply the minimum requirements in the agreement if they are more stringent than its general PUD regulations. Again, this is a restriction on Haring's zoning power.

Defendants further argue that subsection (c) of section 6 allows Haring to unilaterally amend its zoning ordinances over the transferred area, and therefore, the agreement, as a whole, does not restrict Haring's zoning authority. This argument is without merit. Subsection (c) provides that after Haring makes "such amendments" to its zoning ordinance, which undoubtedly refers to the adoption of the minimum requirements in the agreement, the transferred area "shall be subject to Haring's Zoning Ordinance and building codes as then in effect or as subsequently amended." This merely provides that the transferred area will be under the jurisdiction of Haring and subject to its zoning ordinances for the duration of the transfer. While Haring may later amend its zoning ordinance over the transferred area, initially, it is still required to adopt into its ordinance the minimum requirements provided in the agreement before it may consider and approve an application for development. This clearly contracts away Haring's zoning power.[1] It is irrelevant whether Haring later amends its zoning ordinance over the transferred area, because initially, it may only accept an application for development that complies with the minimum requirements in the agreement. Therefore, the trial court did not err in determining that the agreement unlawfully contracts away Haring's legislative zoning power and was therefore void.

Next, defendants argue that if the minimum zoning requirements are unlawful, they may be severed pursuant to the severability clause of the amended agreement, and the remainder of the agreement would remain valid. We disagree. "The primary consideration in determining whether a contractual provision is severable is the intent of the parties." *Prof Rehab Assoc v State Farm Mut Auto Ins Co*, 228 Mich App 167, 174; 577 NW2d 909 (1998). In looking at the intent of the parties, our Supreme Court has explained that two principal factors should be considered:

first, "whether the two or more promises or parts of the contract are so interdependent or interwoven that the parties must be deemed to have contracted only with a view to the performance of both, and would not have entered into one

---

[1] As plaintiffs note, this prevents Haring from determining how it wishes to rezone the transferred area to accomplish economic development. For example, if Haring wanted to forgo rezoning and apply a use variance it could not do so.

-4-

without the other"; and second, whether the consideration for the several promises can be apportioned among them without doing violence to the contract or making a new contract for the parties. 3 Williston, Contracts (3d ed), § 532, p 764. However, "[e]ven though the consideration for each agreement is distinct, if the agreements are interdependent and the parties would not have entered into one in the absence of the other, the contract will be regarded . . . as entire and not divisible." *Id.*, p 765. [*Dumas v Auto Club Ins Ass'n*, 437 Mich 521, 616 n 87; 473 NW2d 652 (1991).]

Although the agreement was amended to include a severability clause, defendants indicate that the only reason the severability clause was added to the agreement was because at the time of the amendment, Haring had "independently" adopted the minimum requirements of the agreement into its zoning ordinance. Therefore, defendants did not care if the zoning requirements were severed from the agreement. Testimony of both Haring and Clam Lake officials indicates that had Haring not adopted the minimum requirements into its zoning ordinance, defendants would not have added the severability provision because they deemed those minimum requirements of utmost importance in deciding to conditionally transfer the property. Even the agreement plainly states that the parties wanted Haring to regulate development of the transferred area, rather than leave it to the county, and the agreement provided for the manner in which Haring would rezone the property once it was transferred. If a future Haring board were to amend the zoning ordinance over the transferred area in a way that differs from the minimum requirements of the agreement, it would interfere with what defendants intended when entering the agreement. Therefore, while the parties may have intended that the zoning provisions be severable when they amended the agreement, the evidence shows that the provisions were "so interdependent or interwoven that the parties must be deemed to have contracted only with a view to the performance" of those provisions. *Dumas*, 437 Mich at 616 n 87. Accordingly, the agreement must be regarded as entire and not divisible, *id.*, and because the contract contains unlawful provisions, the trial court did not err in concluding that it was void.

Finally, defendants argue that § 6 of Act 425 allows for contract zoning, and therefore, the minimum zoning requirements of the agreement were authorized by statute. We disagree. We review de novo questions of statutory interpretation. *Ford Motor Co v Dep't of Treasury*, 496 Mich 382, 389; 852 NW2d 786 (2014). When interpreting statutes, this Court must first examine the language of the statute. *Id.* "If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written." *Id.* (citation and quotation marks omitted). This Court explained in *MidAmerican Energy v Dep't of Treasury*, 308 Mich App 362, 370; 863 NW2d 387 (2014),

"Statutory interpretation requires an holistic approach. A provision that may seem ambiguous in isolation often is clarified by the remainder of the statutory scheme." *SMK, LLC v Dep't of Treasury*, 298 Mich App 302, 309; 826 NW2d 186 (2012), aff'd in part and rev'd in part sub nom *Fradco, Inc v Dep't of Treasury*, 495 Mich 104, 118 (2014) (citation omitted). " 'When construing statutory language, [the court] must read the statute as a whole and in its grammatical context, giving each and every word its plain and ordinary meaning unless otherwise defined.' " *Book–Gilbert v Greenleaf*, 302 Mich App 538, 541,

840 NW2d 743 (2013) (citation omitted) (alteration in original). Doing so requires us to "avoid a construction that would render any part of a statute surplusage or nugatory, and '[w]e must consider both the plain meaning of the critical words or phrases as well as their placement and purpose in the statutory scheme.' " *People v Redden*, 290 Mich App 65, 76-77; 799 NW2d 184 (2010) (citation omitted) (alteration in original). . . .

At issue is MCL 124.26, which provides,

> If applicable to the transfer, a contract under this act may provide for any of the following:
>
> (a) Any method by which the contract may be rescinded or terminated by any participating local unit before the stated date of termination.
>
> (b) The manner of employing, engaging, compensating, transferring, or discharging personnel required for the economic development project to be carried out under the contract.
>
> (c) The fixing and collecting of charges, rates, rents, or fees, where appropriate, and the adoption of ordinances and their enforcement by or with the assistance of the participating local units.
>
> (d) The manner in which purchases shall be made and contracts entered into.
>
> (e) The acceptance of gifts, grants, assistance funds, or bequests.
>
> (f) The manner of responding for any liabilities that might be incurred through performance of the contract and insuring against any such liability.
>
> (g) Any other necessary and proper matters agreed upon by the participating local units.

Specifically, defendants argue that the term "ordinances" in subsection (c) encompasses all types of ordinances, including zoning, and therefore the statute allows for contract zoning in Act 425 agreements. This interpretation, however, reads more words into the statute than are present. The plain language of the statute provides that an agreement may state which local unit will fix and collect rates and adopt and enforce ordinances. The statute does not state that the agreement may provide for the manner in which the participating local units will adopt ordinances, such as dictating how a local unit must zone or rezone the property.

While defendants correctly note that the Legislature has authorized other forms of contract zoning, see MCL 125.3405, MCL 125.3503, and MCL 125.3504, those statutory provisions, by their plain language, specifically provide a mechanism for contract zoning and provide the necessary requirements. In this case, subsection (c) does not do so. Rather, it generally states that the agreement may provide for "the adoption of ordinances and their enforcement by or with the assistance of the participating local units." This is nothing more than

determining which local unit has jurisdiction over the property in terms of governing it and does not necessarily encompass the right to contract zone. Therefore, we conclude that § 6 of Act 425 does not allow for contract zoning.

Affirmed.

/s/ Donald S. Owens
/s/ William B. Murphy
/s/ Joel P. Hoekstra