*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SANDSTONE CREEK SOLAR, LLC and GARY WALTERS,

　　　　　Plaintiffs-Appellants,

v

TOWNSHIP OF BENTON,

　　　　　Defendant-Appellee.

FOR PUBLICATION
February 4, 2021
9:15 a.m.

No. 352910
Eaton Circuit Court
LC No. 2019-001256-CH

Before: GADOLA, P.J., and BORRELLO and M.J. KELLY, JJ.

GADOLA, P.J.

Plaintiffs, Sandstone Creek Solar, LLC (Sandstone) and Gary Walters, appeal as of right the order of the trial court denying their motion for a preliminary injunction, granting in part their claim for relief under Michigan's Freedom of Information Act (FOIA), MCL 15.231 *et seq*., and dismissing their complaint in all other respects. We affirm in part, reverse in part, and remand to the trial court for further proceedings.

## I. FACTS

The facts of this case are largely undisputed. According to plaintiffs, Sandstone is a subsidiary of Geronimo Energy, LLC (Geronimo), a renewable energy development company with its headquarters in Minnesota. Geronimo is a subsidiary of National Grid Ventures, and is the renewable energy platform of National Grid North America, Inc, which according to plaintiffs sells electricity and natural gas to millions of consumers in the northeastern United States.

In 2016, Sandstone began to implement its plan to build a solar power project in Michigan for the purpose of generating electricity for sale in the utility market. Sandstone determined that a desirable location for the power project would be Benton Township, located in Eaton County. Anticipating that the power project would occupy several hundred acres of farmland in Benton Township, Sandstone set about acquiring property interests in various parcels in the township, including land owned by plaintiff Walters.

-1-

At the time Sandstone began acquiring property for its solar project in 2016, Benton Township did not have its own zoning ordinance; as a result, zoning and land use in the township was regulated by Eaton County under its zoning ordinance, known as the Land Development Code. At that time, the Land Development Code did not have a comprehensive ordinance applicable to solar energy systems. According to plaintiffs' second amended complaint, when Eaton County became aware of Sandstone's plan to locate the solar power project in Benton Township, the county began the process of amending its Land Development Code to facilitate the anticipated permit application by Sandstone.

These efforts, however, met with opposition in Benton Township. On May 8, 2017, the Benton Township Board of Trustees adopted a resolution of the Benton Township Planning Commission as Solar Farm Resolution 2017-2. That resolution provided:

> WHEREAS, the proposal for the Solar Farm in Benton/Oneida Townships is not consistent with the current Eaton County Land Development Code (14.1 and 14.5); and
>
> WHEREAS, the proposed Solar Farm is not an agricultural Enterprise but a commercial initiative—which is inconsistent with current zoning designation; and
>
> WHEREAS, it is the position of the Benton Township Planning Commission that any solar farm proposal must conform to the principles of farmland preservation as stipulated in the Benton Township Master Plan and Eaton County Land Development Code; then
>
> Let it be resolved that this position be communicated to the Benton Township Board of Trustees, The Eaton County Planning Commission, and the Eaton County Board of Commissioners for their support.

By letter dated February 20, 2018, Benton Township Supervisor Roger Wickerham advised the Eaton County Planning Commission regarding the county's proposed amendment to its Land Development Code, as follows:

> Benton Township stresses the fact that Large Solar Arrays should not be allowed on agriculture zoned property. Large solar arrays are not an acceptable use for farm land, especially prime farm land. . . .
>
> Approving solar arrays on farm land goes strictly against Benton Township's master plan which we devoted much time, energy and funds to complete. Large solar arrays installed by a private company for profit on this scale is a commercial use of land and should be on that type of zoned property to comply with our Master Plan. We would urge the County to strongly take this into consideration.

Wickerham urged the county to allow large solar arrays only on property zoned light industrial and with a special use permit, consistent with neighboring Oneida Township.

Nonetheless, the Eaton County Board of Commissioners amended the county's Land Development Code by adding § 14.39, "to regulate the safe, effective and efficient use of solar

energy systems in order to reduce or replace the consumption of electricity supplied by utility companies." As amended, the Code permits "[s]olar energy systems, large or medium as provided in Section 14.39 of this Ordinance," in limited agricultural (LA) districts, by conditional use permit. Eaton County Land Development Code, § 7.3.4(Z).

On October 17, 2019, Sandstone submitted a conditional use permit application to Eaton County, indicating that Sandstone had purchase agreements for approximately 850 acres[1] zoned as limited agricultural in Benton Township. The Benton Township Board of Trustees held a special meeting on October 30, 2019, at which the board adopted a resolution providing that the township would perform its own zoning from that date forward as provided by the Michigan Zoning Enabling Act ("MZEA"), MCL 125.3101 *et seq.*, and imposed a moratorium on new permits for one year or until the land use and zoning ordinances were put in place. On November 5, 2019, Benton Township requested that the Eaton County Planning Commission "table any matters concerning land use and planning within Benton Township to provide sufficient time for the Township to establish its own zoning ordinance."

The Benton Township Planning Commission met November 7, 2019, reviewed a proposed interim zoning ordinance, and approved a resolution recommending that the proposed interim zoning ordinance be adopted by the township board. The interim zoning ordinance permitted small-scale solar energy systems in districts zoned for industrial use, and permitted large-scale solar energy systems in industrial districts by special use permit. The township planning commission submitted the proposed interim zoning ordinance to the Eaton County Planning Commission "for the purpose of coordinating the zoning ordinance with the zoning ordinances of Eaton County and municipalities with zoning ordinances that have a common boundary with Benton Township no later than November 8, 2019."

On November 11, 2019, the Benton Township Board of Trustees received comments on the recommended interim zoning ordinance and approved a resolution to accept the interim zoning ordinance from the township planning commission as of the date of the meeting. The resolution provided that the board would receive comments from the Eaton County Planning Commission, Eaton County Community Development Department, township residents, and any other individuals or municipalities for 15 days before the interim zoning ordinance would be considered approved. It also provided that the board would hold a public meeting on or after November 26, 2019, to consider giving the interim zoning ordinance immediate effect. The township planning commission was directed to "initiate steps to prepare a final and permanent zoning ordinance pursuant to the MZEA for consideration of the Township Board while the interim zoning ordinance remains in effect." On November 26, 2019, the Benton Township Board of Trustees convened

---

[1] A typical township is comprised of 36 sections, with each section consisting of 640 acres, for a total of 23,040 acres. *Town Range and Section in Michigan* http://www.michigan.gov/documents/deq/ogs-oilandgas-mapping-t-r-s_263223_7.pdf (accessed January 15, 2021). In October 2019, Sandstone had already acquired a purchase interest in 850 acres in Benton Township, or about 3.7% of a typical township, for its solar power project.

and adopted a resolution approving the interim zoning ordinance, and gave it immediate effect as of November 27, 2019.  Notice of the interim zoning ordinance was published November 30, 2019.

On December 2, 2019, Walters submitted to the Benton Township clerk a notice of intent to file a referendum petition pursuant to MCL 125.3402, challenging the interim zoning ordinance. That same day, Sandstone filed a complaint[2] with the trial court initiating this case.  As later amended, the complaint set forth five claims: Count I sought declaratory judgment that the interim zoning ordinance was invalid because Benton Township had failed to follow the requirements of the MZEA in enacting the interim zoning ordinance; Count II sought declaratory judgment that Benton Township had improperly imposed a moratorium on projects within the township; Count III alleged that the interim zoning ordinance imposed exclusionary zoning in violation of MCL 125.3207; Count IV alleged a violation of the FOIA; and Count V sought declaratory judgment that Benton Township's refusal to accept Walters' referendum petition was improper and unlawful.

Plaintiffs also moved for a preliminary injunction seeking an order compelling Benton Township to accept Walters' referendum petition, to determine the adequacy of the petition, and to place the interim zoning ordinance on the ballot at the next regular or special election.  The township opposed plaintiffs' motion for a preliminary injunction, contending that no right of referendum existed with respect to an interim zoning ordinance adopted under MCL 125.3404. Because the township at that time had not yet received Walters' petition, the township also asserted that plaintiffs' request for relief was not ripe.

The trial court held hearings on plaintiffs' motion for preliminary injunction on December 20, 2019, and on January 21, 2020.  In their supplemental brief submitted to the trial court, plaintiffs sought not only the preliminary injunction as requested in their motion, but also sought declaratory judgment by the trial court on Count V of their second amended complaint that the interim zoning ordinance was subject to referendum under the MZEA.  Plaintiffs also argued in their supplemental brief before the trial court that they were entitled to a preliminary injunction on the basis that the township did not follow the procedures of the MZEA, as alleged in Count I of their second amended complaint.

By contrast, Benton Township argued that plaintiffs were not entitled to a preliminary injunction because the interim zoning ordinance was adopted pursuant to MCL 125.3404, and therefore was not subject to referendum.  The township also argued that plaintiffs were not entitled to relief regarding their claim that the township failed to follow the procedures outlined in the MZEA because that relief was not requested in plaintiffs' motion, was not relevant to deciding whether the township must accept a petition for referendum, and lacked merit because the township used a proper process to adopt its interim zoning ordinance.

The trial court's scheduling order specified that at the January 21, 2020 hearing, the trial court would consider "Plaintiffs' request for injunctive relief as well as the merits of Count V of Sandstone's Complaint, as amended, which seeks a declaratory judgment with respect to the right

---

[2] The complaint was thereafter amended twice; the second amended complaint added Walters as a plaintiff.

to referend an interim zoning ordinance." The trial court also ordered Benton Township to make an adequacy determination regarding the referendum petition before the January 21, 2020 hearing.

At the conclusion of the hearing, the trial court denied plaintiffs' motion for a preliminary injunction, finding that plaintiffs were not likely to succeed on the merits of the case and that there was no danger of irreparable harm to plaintiffs or harm to the public interest without a preliminary injunction. With respect to plaintiffs' request for declaratory judgment under Count V of their second amended complaint, the trial court dismissed Count V, finding that the MZEA did not provide for a right of referendum of an interim zoning ordinance.

The trial court also dismissed Counts I-IV of plaintiffs' second amended complaint. The trial court observed that similar to the relief sought in Count V, in Count I plaintiffs had requested that the trial court declare Benton Township's interim zoning ordinance invalid on the alternative basis that the township failed to follow the requirements of the MZEA when adopting the interim zoning ordinance. The trial court dismissed Count I, holding that the interim zoning ordinance was not improperly implemented. The trial court also dismissed Count II of plaintiffs' second amended complaint, which alleged that Benton Township unlawfully imposed a moratorium on projects within the township, and Count III of plaintiffs' second amended complaint, which asserted a claim for exclusionary zoning in violation of MCL 125.4207.

The trial court granted plaintiffs partial relief under Count IV of their second amended complaint, which alleged that Benton Township had failed to comply with the FOIA. The trial court required the township to produce any additional responsive materials on or before February 21, 2020, and ordered the township to pay plaintiffs $2,000 in costs and attorney fees in satisfaction of the FOIA violation. The trial court summarized its ruling:

> To summarize, it is the order of this court that the township zoning ordinance having been implemented consistent with the Michigan Zoning Enabling Act is valid and cannot be subject to referendum until such a time as an official permanent zoning ordinance is ready to be implemented.
>
> Given the process is somewhat new to the Township board, it is reasonable for them to invoke the temporary . . . moratorium on new permits in the interim zoning.
>
> The fact that the interim zoning ordinance does not allow Sandstone Creek to continue with its project as intended or way intended, does not amount to exclusionary zoning, as Sandstone Creek has not shown the presence of a demonstrated need for solar power in or around Benton Township.
>
> And even if the right to referendum did apply to interim zoning ordinance[s] under the Michigan Zoning Enabling Act, Sandstone Creek has not met the requirements for a preliminary injunction as set forth.
>
> However, the Township, as I previously ordered, will within 30 days under the Freedom of Information Act, will supply that.

-5-

The trial court thereafter issued its order denying plaintiffs' motion for preliminary injunction and dismissing plaintiffs' second amended complaint. Plaintiffs now appeal.

## II. ANALYSIS

### A. RIGHT OF REFERENDUM UNDER THE MZEA

Plaintiffs contend that the trial court erred by finding that Benton Township's interim zoning ordinance was not subject to a petition for referendum under the MZEA, and that the trial court therefore abused its discretion by denying their motion for a preliminary injunction and dismissing their claim for declaratory judgment set forth in Count V of their second amended complaint. We disagree.

Municipalities do not have inherent power to regulate land use through zoning. *Olsen v Chikaming Twp*, 325 Mich App 170, 179; 924 NW2d 889 (2018). Our state's Legislature, as an exercise of police power, may authorize municipalities to enact zoning ordinances. See *Krajenke Buick Sales v Hamtramck City Engineer*, 322 Mich 250, 254; 33 NW2d 781 (1948). In 2006, our Legislature consolidated three previous zoning enabling acts into the MZEA, *Olsen*, 325 Mich App at 179, which grants local units of government authority to regulate land development and use through zoning. *Maple BPA, Inc v Bloomfield Charter Twp*, 302 Mich App 505, 515-516; 838 NW2d 915 (2013).

Specifically, the MZEA provides that "[a] local unit of government may provide by zoning ordinance for the regulation of land development and the establishment of 1 or more districts within its zoning jurisdiction which regulate the use of land and structures to meet the needs of the state's citizens. . . ." MCL 125.3201(1); *Ansell v Delta Co Planning Comm*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 345993); slip op at 2. " 'Zoning jurisdiction' means the area encompassed by the legal boundaries of a city or village or the area encompassed by the legal boundaries of a county or township outside the limits of incorporated cities and villages. The zoning jurisdiction of a county does not include the areas subject to a township zoning ordinance.' " MCL 125.3102(w). A township that has enacted a zoning ordinance under the MZEA "is not subject to an ordinance, rule, or regulation" adopted by a county. MCL 125.3209.

In this case, the parties do not dispute that Eaton County exercised zoning powers over Benton Township until Benton Township adopted an interim zoning ordinance under MCL 125.3404. Plaintiffs sought to challenge that interim ordinance by referendum. The central issue in this case is whether the trial court erred by determining that Benton Township's interim zoning ordinance is not subject to a petition for referendum under the MZEA.

We review de novo issues involving the construction of statutes and ordinances. *Bonner v City of Brighton*, 495 Mich 209, 221-222; 848 NW2d 380 (2014). To determine whether in this case the trial court erred by determining that the interim zoning ordinance is not subject to a petition for referendum under the MZEA, we look first to the provisions of the MZEA, mindful that our primary task when interpreting a statute is to discern and give effect to the intent of the Legislature. See *Ford Motor Co v Dep't of Treasury*, 496 Mich 382, 389; 852 NW2d 786 (2014). We do so by first examining the plain language of the statute. *Driver v Naini*, 490 Mich 239, 246-247; 802 NW2d 311 (2011). We read statutory provisions "in the context of the entire act, giving

every word its plain and ordinary meaning," *id*. at 247, and avoid reading any statutory provision in isolation. *Robinson v Lansing*, 486 Mich 1, 15; 782 NW2d 171 (2010). In doing so, we avoid a construction of the statute that would render any part of it surplusage or nugatory. *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 361; 917 NW2d 603 (2018). When the language of a statute is clear and unambiguous, we apply the statute as written, and judicial construction is neither required nor permitted. *Ally Financial Inc v State Treasurer*, 502 Mich 484, 493; 918 NW2d 662 (2018).

Before the enactment of the MZEA, zoning authority for townships was provided by the now-repealed Township Rural Zoning Act ("TRZA"), MCL 125.271 *et seq*. Under § 15 of the TRZA, MCL 125.285, a township board could direct the township's zoning board to submit recommendations regarding the provisions of the interim zoning ordinance "and to submit those recommendations without consideration for sections 7, 8, 9, 11 and 12," which thereby expressly exempted interim township zoning ordinances from the right of referendum. In discussing that statutory section, this Court observed in *Lake Twp v Sytsma*, 21 Mich App 210; 175 NW2d 337 (1970), that "[e]nactment of an original ordinance . . . requires notice, hearings, and submission to the electors," but that the Legislature excepted interim zoning ordinances from that basic rule in MCL 125.285 "[t]o protect the public health, safety, morals, and general welfare . . . [d]uring the period required for the preparation and enactment of an ordinance authorized by this act, . . ." *id*. at 212-213, thus providing for "a stopgap ordinance" while preparations were made to enact a full and complete zoning ordinance. *Id*. at 213

Plaintiffs argue that because § 404 of the MZEA does not include that same language of former MCL 125.285, that the township board may direct the township's zoning board to submit recommendations regarding the provisions of an interim zoning ordinance "and to submit those recommendations without consideration for sections 7, 8, 9, 11 and 12," our Legislature must have intended that § 404 of the MZEA subject interim zoning ordinances to referendum. Plaintiffs' argument is premised upon the principle that a statutory amendment signals a change in the meaning of the statute or a desire of the Legislature to correct or clarify the statute amended. See *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009). However, changes in statutory language do not always indicate a change in statutory meaning. *Michigan Charitable Gaming Ass'n v Michigan*, 310 Mich App 584, 607; 873 NW2d 827 (2015). Moreover, the MZEA did not amend the TRZA; rather, the MZEA repealed and replaced the TRZA and other zoning enabling legislation, supplanting the provisions of the TRZA with the provisions of the MZEA. We therefore are not persuaded that all provisions of the MZEA must be read exclusively through the lens of the now-repealed TRZA. The MZEA is a stand-alone, comprehensive zoning statute that was entirely new when first enacted. We are not influenced in this case by the terms of a statute the Legislature repealed and replaced in enacting the MZEA, particularly when we are convinced of the statutory meaning without resort to the language of a repealed act. A review of the provisions of the MZEA reveals that the act involves separate and distinct procedures for the enactment of interim and non-interim ordinances. Section 401 of the MZEA, MCL 125.3401, governs the adoption of zoning ordinances, sometimes referred to as "initial" zoning ordinances, by the legislative body of a municipality. Section 402 of the MZEA, MCL 125.3402, provides the process by which an elector of a county or township may challenge a zoning ordinance by petitioning for referendum. The MZEA dedicates a separate section to interim zoning ordinances. Section 404 of the MZEA, MCL 125.3404, provides:

(1) To protect the public health, safety, and general welfare of the inhabitants and the lands and resources of a local unit of government during the period required for the preparation and enactment of an initial zoning ordinance under this act, the legislative body of a local unit of government may direct the zoning commission to submit, within a specified period of time, recommendations as to the provisions of an interim zoning ordinance.

(2) Before presenting its recommendations to the legislative body, the zoning commission of a township shall submit the interim zoning ordinance, or an amendment to the ordinance, to the county zoning commission or the coordinating zoning committee, for the purpose of coordinating the zoning ordinance with the zoning ordinances of a township, city, or village having a common boundary with the township. The ordinance shall be considered approved 15 days from the date the zoning ordinance is submitted to the legislative body.

(3) After approval, the legislative body, by majority vote of its members, may give the interim ordinance or amendments to the interim ordinance immediate effect. An interim ordinance and subsequent amendments shall be filed and published as required under section 401.

(4) The interim ordinance, including any amendments, shall be limited to 1 year from the effective date and to not more than 2 years of renewal thereafter by resolution of the local unit of government.

Distinctions between an initial ordinance adopted under § 401 and an interim ordinance approved under § 404 exist. For example, interim zoning ordinances are temporary, limited under § 404(4) to one year from their effective date, and renewable for two additional years; by contrast, an initial zoning ordinance does not have an expiration date. Interim zoning ordinances may be given immediate effect under § 404, thereby providing a stopgap measure to give the municipality adequate time to develop a permanent zoning ordinance; initial zoning ordinances are not given immediate effect under § 401.

The purpose of the procedural differences applicable to initial and to interim zoning ordinances is evident from the clearly expressed intent of § 404 to allow local units of government to adopt an interim zoning ordinance "[t]o protect the public health, safety, and general welfare of the inhabitants and the lands and resources of a local unit of government during the period required for the preparation and enactment of an initial zoning ordinance" under the MZEA. MCL 125.3404(1). To achieve that result, § 404 provides clear direction for adopting an interim zoning ordinance, providing that the interim zoning ordinance is considered approved 15 days from the date the interim zoning ordinance is submitted to the legislative body, MCL 125.3404(2), that after approval the interim zoning ordinance may be given immediate effect, and that the interim zoning ordinance "shall be filed and published as required under section 401." MCL 125.3404(3). It appears to us that the clearly stated legislative purpose "[t]o protect the public health, safety, and general welfare . . . during the period required for the preparation and enactment of an initial zoning ordinance," and the provision allowing an interim ordinance to take immediate effect for those purposes, would be defeated if interim ordinances could be automatically suspended upon the filing of a referendum petition. In other words, the logic that this Court articulated in *Sytsma*

applies with equal force today, despite the absence of an express exemption from the right of referendum in the MZEA.

The filing and publishing requirements under § 401, MCL 125.3401, are contained in subsections (7), (9), and (10) of the statute and provide as follows:

(7) Following adoption of a zoning ordinance or any subsequent amendments by the legislative body, the zoning ordinance or subsequent amendments shall be filed with the clerk of the legislative body, and a notice of ordinance adoption shall be published in a newspaper of general circulation in the local unit of government within 15 days after adoption.

* * *

(9) The notice required under this section shall include all of the following information:

(a) In the case of a newly adopted zoning ordinance, the following statement: "A zoning ordinance regulating the development and use of land has been adopted by the legislative body of the [county, township, city, or village] of _____."

(b) In the case of an amendment to an existing zoning ordinance, either a summary of the regulatory effect of the amendment, including the geographic area affected, or the text of the amendment.

(c) The effective date of the ordinance or amendment.

(d) The place where and time when a copy of the ordinance or amendment may be purchased or inspected.

(10) The filing and publication requirements under this section supersede any other statutory or charter requirements relating to the filing and publication of county, township, city, or village ordinances.

A plain reading of MCL 125.3404 reveals no other requirements for the adoption of an interim zoning ordinance. Specifically, § 404 contains no hearing requirement for an interim zoning ordinance, and there is nothing in the language of § 404 indicating that an interim zoning ordinance is subject to referendum.

Plaintiffs argue, however, that all zoning ordinances are subject to referendum because § 402(1) of the MZEA, MCL 125.3402(1), provides that "[w]ithin 7 days after publication of a zoning ordinance under section 401, a registered elector residing in the zoning jurisdiction of a county or township may file with the clerk of the legislative body a notice of intent to file a [referendum] petition under this section." Plaintiffs argue that because § 404(3) requires an interim zoning ordinance to be "filed and published as required under section 401," an interim zoning ordinance falls within the provision of § 402(1) that permits referendum "within 7 days after publication of a zoning ordinance under section 401." That is, plaintiffs urge that § 402(1) permits

referendum for any zoning ordinance if it is published under § 401, and thus should be read to include publication of an interim ordinance in accordance with § 401 as required by § 404(3). Stated another way, plaintiffs read "publication of a zoning ordinance under section 401" to mean "any ordinance published under section 401," and not "an ordinance under section 401 that has been published."

We decline to construct that meaning from the language of § 402(1). Although the limited phrase "publication of a zoning ordinance under section 401" is perhaps subject to more than one possible meaning, the MZEA's separate and distinct procedures for the enactment of interim and initial ordinances is not. As noted, we read statutory provisions "in the context of the entire act, giving every word its plain and ordinary meaning," *Driver*, 490 Mich at 247, and avoid reading any statutory provision in isolation. *Robinson*, 486 Mich at 15. Because the MZEA is plain and unambiguous in mandating separate and distinct procedures for the enactment of interim and initial ordinances, and because the purpose and procedures of § 404 for an interim zoning ordinance mandate automatic approval for the temporary time that the interim zoning ordinance exists, there is no need for this Court to engage in statutory interpretation of § 402(1). See *Ally Financial Inc*, 502 Mich at 493. Section 404 addresses the adoption of interim zoning ordinances and makes no reference to a right of referendum. Section 401 addresses the adoption and amendment of zoning ordinances or initial zoning ordinances, not interim zoning ordinances. And section 402 subjects zoning ordinances, not interim zoning ordinances, to the right of referendum. We therefore conclude that the trial court properly held that the right to file a petition for referendum under MCL 125.3402 does not apply to an interim zoning ordinance implemented under MCL 125.3404.

## B. INJUNCTIVE RELIEF

Before the trial court, plaintiffs sought a preliminary injunction compelling Benton Township to accept Walters' referendum petition, to determine the adequacy of the petition, and to place the interim zoning ordinance on the ballot at the next election. Plaintiffs argued that they were likely to succeed under Count V of their second amended complaint asserting that the interim zoning ordinance was subject to referendum, and also under the alternative ground set forth in Count I of their second amended complaint that the interim zoning ordinance was invalid because it was improperly enacted. On appeal, plaintiffs contend that the trial court abused its discretion in denying their request for injunctive relief because they were entitled to prevail on Counts I and V. We disagree.

We review a trial court's decision concerning a preliminary injunction for an abuse of discretion. *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 32; 896 NW2d 39 (2016). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*. at 33-34.

The party requesting injunctive relief has the burden to establish that a preliminary injunction is warranted. MCR 3.310(A)(4); *Slis v State*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket Nos. 351211, 351212); slip op at 9. A preliminary injunction generally is considered a form of equitable relief intended to maintain the status quo pending a final hearing determining the rights of the parties, *id*., and is considered an extraordinary remedy. *Janet Travis, Inc v Preka Holdings, LLC*, 306 Mich App 266, 274; 856 NW2d 206 (2014). When determining

whether to grant the extraordinary remedy of a preliminary injunction, the trial court must consider:

> (1) whether the applicant has demonstrated that irreparable harm will occur without the issuance of an injunction; (2) whether the applicant is likely to prevail on the merits; (3) whether the harm to the applicant absent an injunction outweighs the harm an injunction would cause to the adverse party; and (4) whether the public interest will be harmed if a preliminary injunction is issued. [*Slis*, ___ Mich App at ___; slip op at 9.]

A preliminary injunction should not be issued if an adequate legal remedy is available. *Pontiac Fire Fighters Union Local 376 v City of Pontiac*, 482 Mich 1, 9; 753 NW2d 595 (2008). Economic injuries generally are not sufficient to demonstrate irreparable injury because such injuries typically can be remedied by damages at law. *Alliance for Mentally Ill of Mich v Dep't of Community Health*, 231 Mich App 647, 664; 588 NW2d 133 (1998). In addition, the mere apprehension of future injury or damage cannot be the basis for injunctive relief. *Pontiac Fire Fighters*, 482 Mich at 9.

As discussed, the trial court correctly determined that plaintiffs were not likely to succeed in Count V of their second amended complaint. Plaintiffs contend, however, that they are likely to succeed on the merits of Count I of their complaint because Benton Township did not follow the procedural requirements outlined in MCL 125.3404 when adopting the interim zoning ordinance, thereby rendering the interim zoning ordinance invalid. Again, MCL 125.3404 provides, in relevant part:

> (1) To protect the public health, safety, and general welfare of the inhabitants and the lands and resources of a local unit of government during the period required for the preparation and enactment of an initial zoning ordinance under this act, the legislative body of a local unit of government may direct the zoning commission to submit, within a specified period of time, recommendations as to the provisions of an interim zoning ordinance.
>
> (2) Before presenting its recommendations to the legislative body, the zoning commission of a township shall submit the interim zoning ordinance, or an amendment to the ordinance, to the county zoning commission or the coordinating zoning committee, for the purpose of coordinating the zoning ordinance with the zoning ordinances of a township, city, or village having a common boundary with the township. The ordinance shall be considered approved 15 days from the date the zoning ordinance is submitted to the legislative body.

Plaintiffs argue that under § 404(1), the township's resolution to provide for its own zoning did not provide sufficient direction to the planning commission to adopt an interim zoning ordinance and did not comply with the required procedural requirements of (1) including the word "interim" in the resolution, (2) directing the planning commission to respond within a specified period of time, and (3) directing the planning commission to provide recommendations on provisions for the ordinance. As the trial court observed, however, the Legislature's use of the word "may" in § 404(1) indicates a permissive, but not mandatory, provision. *Walters v Nadell*,

481 Mich 377, 383; 751 NW2d 431 (2008). Thus, § 404(1) provides that the township was permitted, but not required, to direct the zoning commission to submit, within a specified period of time, recommendations as to the provisions of an interim zoning ordinance; the failure to do so does not invalidate the interim zoning ordinance. Further, given that the planning commission reviewed a recommended interim zoning ordinance seven days later and approved a resolution recommending that the proposed interim zoning ordinance be adopted by the board, it is clear that the planning commission understood that the township board's resolution was a directive to prepare an interim zoning ordinance to provide for immediate zoning within the township.

Plaintiffs also argue that the interim zoning ordinance is invalid because Benton Township did not have a valid planning commission that could act as a zoning commission required by § 404(2) to submit its recommended interim zoning ordinance to the county zoning commission. Plaintiffs acknowledge that § 301(1)(b) of the MZEA, MCL 125.3301(1)(b), permits a planning commission created before enactment of the MZEA to exercise the powers and perform the duties of a zoning commission under the MZEA. Section 301(1)(b) provides that each local unit of government shall create a zoning commission unless

> [a] planning commission was, as of June 30, 2006, in existence in the local unit of government and pursuant to the applicable planning enabling act exercising the powers and performing the duties of a county zoning commission created under former 1943 PA 185, of a township zoning board created under former 1943 PA 184, or of a city or village zoning commission created under former 1921 PA 207. Unless abolished by the legislative body, that existing planning commission shall continue and exercise the powers and perform the duties of a zoning commission under this act. [MCL 125.3301(1)(b).]

Plaintiffs' assertion that the planning commission was not in existence before June 30, 2006, is not supported by the evidence. As noted by the trial court, Benton Township's master plan reflects that the planning commission participated in the preparation of the August 21, 2001 master plan. The trial court did not err by finding that the township satisfied sections 301(1)(b) and 404(2) by having a properly constituted planning commission before June 30, 2006, exercising the powers and duties of a zoning commission.

Plaintiffs argue, however, that the township planning commission was not "proper" under the Michigan Planning Enabling Act (MPEA), MCL 125.3801 *et seq*., at the time the commission developed the interim zoning ordinance. The prior township planning act, along with the municipal planning act and the county planning act, were replaced by the MPEA. MCL 125.3885. MCL 125.3881(3) provides:

> (3) Unless repealed, an ordinance creating a planning commission under former 1931 PA 285 or former 1945 PA 282 or a resolution creating a planning commission under former 1959 PA 168 continues in effect under this act, and the planning commission need not be newly created by an ordinance adopted under this act. However, all of the following apply:
>
> (a) Beginning on the effective date of this act, the duties of the planning commission are subject to the requirements of this act.

(b) The legislative body shall amend the ordinance, or repeal the ordinance or resolution and adopt a new ordinance, to fully conform to the requirements of this act by the earlier of the following dates:

(*i*) The date when an amendatory or new ordinance is first adopted under this act for any purpose.

(*ii*) July 1, 2011.

Plaintiffs argue that because Benton township did not amend its current ordinance or adopt a new ordinance to fully conform to the MPEA by July 1, 2011, the planning commission "did not exist" and was not authorized to conduct the duties of a planning commission under the MZEA at the time the interim ordinance was developed.[3] They argue that the interim ordinance is therefore invalid. However, while MCL 125.3881(3)(b)(*ii*) states that the legislative body shall amend the preexisting ordinance creating the planning commission or repeal the ordinance or resolution and adopt a new ordinance, to fully conform to the requirements of the act by no later than July 1, 2011, the MPEA provides no penalty or remedy if such action is not taken. No sanction should be read into a clear statute that is not within the manifest intention of the Legislature as derived from the language of the statute itself. *Nikola v MIC Gen Ins Co*, 500 Mich 115, 123; 894 NW2d 552 (2017). We will not read such a sanction into the statute by judicially declaring that the failure to adopt a new ordinance by the designated date renders the planning commission a nullity. The trial court did not abuse its discretion by finding that plaintiffs were not likely to prevail on the merits of Count I of their second amended complaint.

Plaintiffs also argue that they will suffer irreparable harm from the loss of their property interests in the real estate upon which they hope to build a solar energy project. However, the "mere apprehension of future injury or damage cannot be the basis for injunctive relief." *Pontiac Fire Fighters*, 482 Mich at 9. As the trial court noted, Sandstone acquired its property interests knowing that the Eaton County zoning ordinance did not provide for solar energy systems. Application of the township's interim zoning ordinance does not deprive Sandstone of the property interests that existed when it acquired the interests, or as those interests existed at the time the interim zoning ordinance was implemented. The trial court did not abuse its discretion by finding that plaintiffs failed to demonstrate that they would suffer irreparable harm if an injunction was not issued.

Plaintiffs further argue that irreparable harm will result from the township's purported deprivation of the rights of its citizens to consider the interim zoning ordinance at a general election. But the township has taken no action to interfere with its citizens' election rights simply by adopting an interim zoning ordinance. Township citizens have the right to seek referendum of a permanent zoning ordinance if one is adopted. No such right exists with respect to an interim zoning ordinance.

---

[3] Plaintiffs do not dispute that the township subsequently reaffirmed and reestablished the planning commission under the MPEA.

Because plaintiffs failed to demonstrate likely success on the merits or to establish irreparable harm, it was not necessary for the trial court to reach the additional factor of balancing the relative interests of the parties. See *Michigan AFSCME Council 25 v Woodhaven-Brownstone Sch Dis*, 293 Mich App 143, 148-149; 809 NW2d 444 (2011). Because plaintiffs failed to show that the trial court's denial of their motion for a preliminary injunction falls outside the range of reasonable and principled outcomes, we conclude that the trial court did not abuse its discretion by denying their motion for a preliminary injunction.

## C. DISMISSAL OF THE COMPLAINT

Plaintiffs also contend that the trial court erred by summarily dismissing Counts I through IV of their second amended complaint when ruling on their motion for preliminary injunction. Plaintiffs argue that dismissal of the remaining counts of their complaint at this stage of the proceedings deprived them of notice and opportunity to be heard, and deprived them of an opportunity to amend their complaint.

We review de novo the trial court's application of the court rules, and also whether a party has been afforded due process of law. *AFP Specialties, Inc v Vereyken*, 303 Mich App 497, 504; 844 NW2d 470 (2014). This Court also reviews de novo a trial court's decision on a motion for summary disposition. *Ellison v Dep't of State*, 320 Mich App 169, 175; 906 NW2d 221 (2017).

The United States and the Michigan Constitutions provide that no person shall be deprived of property without due process of law. US Const, Am XIV; Const 1963, art 1, § 17. Due process requires that a party receive notice of the proceedings against it and a meaningful opportunity to be heard. *Bonner*, 495 Mich at 235. In this case, the trial court dismissed all counts of plaintiffs' second amended complaint, essentially granting the township summary disposition under MCR 2.116(I). That court rule provides, in pertinent part, that "[i]f the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact, the court shall render judgment without delay." Although a trial court may sua sponte grant summary disposition under MCR 2.116(I), the trial court may not do so in contravention of a party's due process rights. *Lamkin v Hamburg Twp*, 318 Mich App 546, 550; 899 NW2d 408 (2017).

Here, the trial court's dismissal of Counts I and V did not violate plaintiffs' due-process rights. As discussed, in Count V plaintiffs sought declaratory judgment that Benton Township's refusal to accept Walters' referendum petition was improper and unlawful. In Count I, plaintiffs offered an alternative ground for granting the relief sought in Count V, asserting that the interim zoning ordinance was invalid because the township failed to follow the procedures outlined in the MZEA for adopting an interim zoning ordinance. In their supplemental brief in support of their motion for preliminary injunction, plaintiffs sought relief and declaratory judgment under both Counts I and V of their second amended complaint in addition to seeking a preliminary injunction. The trial court heard plaintiffs' arguments fully on those Counts at the continued motion hearing where plaintiffs availed themselves of the opportunity to present evidence related to their likelihood of success on the merits, and submitted their supplemental brief and exhibits supporting their position. Plaintiffs thus had ample notice and an opportunity to be heard regarding the merits of Counts I and V of their second amended complaint.

With respect to Count IV, although the trial court dismissed plaintiffs' FOIA claim, the trial court granted plaintiffs' request for relief. The record indicates that the parties reached an agreement during the proceedings regarding the FOIA request, and the trial court ordered the township to produce additional documents responsive to plaintiffs' FOIA request on or before February 21, 2020, and to pay certain fees to plaintiffs, while retaining jurisdiction to enforce the order. Plaintiffs clearly were heard on Count IV of their complaint.

With respect to Counts II and III, however, the record does not convince us that plaintiffs were on notice that the trial court was prepared to consider the dismissal of those claims. As noted, in Count II of their second amended complaint plaintiffs sought declaratory judgment that Benton Township had improperly imposed a moratorium on projects within the township, while in Count III plaintiffs alleged that the interim zoning ordinance imposed exclusionary zoning in violation of MCL 125.4207. Although the record indicates that the parties referred to the motion for preliminary injunction as akin to a discussion of summary disposition, neither party specifically addressed the merits of Counts II and III in their supplemental briefing. A trial court's failure to inform the plaintiff that it is contemplating summary disposition of the plaintiff's claims is a fatal procedural flaw necessitating reversal. *Lamkin*, 318 Mich App at 550-551. The trial court therefore erred in dismissing Counts II and III of plaintiffs' second amended complaint without notice and hearing on those Counts.

We affirm the trial court's denial of the motion for preliminary injunction, the trial court's grant of partial relief to plaintiffs under Count IV of the second amended complaint, and the trial court's dismissal of Counts I, IV, and V of the second amended complaint. We reverse the trial court's dismissal of Counts II and III of the second amended complaint, and we remand to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Michael J. Kelly