*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNITED STATES STEEL CORP.,

Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

Defendant-Appellee.

UNPUBLISHED
June 15, 2023
APPROVED FOR
PUBLICATION
August 22, 2023
9:15 a.m.

No. 361069
Court of Claims
LC No. 21-000129-MT

Before: RIORDAN, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

In this dispute involving the amount of interest owed on a tax refund, plaintiff United States Steel Corp. appeals as of right the March 30, 2022 order of the Court of Claims denying its motion for summary disposition under MCR 2.116(C)(10) and granting summary disposition in favor of defendant Department of Treasury under MCR 2.116(I)(2). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

The issue presented in this appeal is narrow. At this juncture, the parties do not appear to dispute that plaintiff was entitled to a tax refund, including statutory interest pursuant to MCL 205.30. The parties' dispute concerns the amount of interest owed to plaintiff. Specifically, the parties disagree about the date on which plaintiff filed its claim for a refund for purposes of determining the starting date from which to calculate the amount of interest due.

The relevant factual background necessary to provide context for the parties' dispute was succinctly stated by the Court of Claims in its opinion and order granting summary disposition to defendant:

Defendant conducted an audit of plaintiff's tax returns filed under the Corporate Income Tax Act (CITA) in May 2018. One of the issues at the time was

-1-

whether U.S. Steel Holdings, which was a subsidiary of plaintiff, should be included in plaintiff's unitary business group (UBG) as that term is defined under MCL 206.611(6). In late 2018, plaintiff's representative, Mashawn Lorenz, informed Elaine Van Buskirk, defendant's audit supervisor, that plaintiff believed it had mistakenly omitted U.S. Steel Holding from its UBG. The inclusion of U.S. Steel Holdings in the UBG would have reduced plaintiff's business income because of losses incurred by the subsidiary.

On October 17, 2018, Lorenz sent an email to Van Buskirk with the subject line "RE: [External]-RE: Status of Audit." The email, which discussed U.S. Steel Holdings, is referred to by the parties as the "Holdings Memo," and is critical to plaintiff's assertions in this case. The memo begins with Lorenz's assertion, "I believe we should have included U.S. Steel Holdings Inc. in our 2013 Michigan CIT Unitary Business Group." According to the memo, "the issue is whether" U.S. Steel Holdings was considered a "foreign operating entity" under MCL 206.607(3). Lorenz concluded that U.S. Steel Holdings was not a foreign operating entity "because it does not meet subsection (c) of MCL 206.607(3)" for the reason that less than 80% of its income was "attributable to active foreign business income derived from sources outside of the United States." And because U.S. Steel Holdings was not a foreign operating entity, Lorenz believed that it "therefore should be included in U.S. Steel's UBG for purposes of the Michigan 2013 CIT" return. The message concluded with Lorenz asking Van Buskirk, "Please let me know what you think." The memo did not, however, explain the effect that the inclusion of U.S. Steel Holdings in plaintiff's UBG would have on plaintiff's CIT liability. Nor did the memo contain an express request for a refund.[3]

---

[3] Plaintiff submitted a substantially similar version of the Holdings Memo on June 28, 2019.

---

Lorenz and Van Buskirk spoke by telephone shortly after Lorenz sent the Holdings Memo by email. The parties' documentary evidence presents conflicting accounts of their discussions on the call. An affidavit from Lorenz contains averments in which she states that she recalled asking what needed to be done to request a refund as a result of adding U.S. Steel Holdings to the UBG. Van Buskirk, meanwhile, averred that she and Lorenz discussed the foreign-entity status of U.S. Steel Holdings, but she did not recall a refund request during the call.

Defendant finished its audit in May 2020 and did not include U.S. Steel Holdings in the UBG for the tax years in issue. Plaintiff disagreed with the results of the audit and, on July 27, 2020, plaintiff filed a written request for an informal conference. The informal-conference request stated that plaintiff proposed certain adjustments to its UBG and income. In particular, plaintiff discussed the loss incurred by U.S. Steel Holdings and plaintiff's position that U.S. Steel Holdings should be included in the UBG. Plaintiff asserted that the inclusion of the loss from U.S. Steel Holdings for the audit period led plaintiff to "specifically request[ ] a refund in the amount of $4,525,796, plus any applicable interest."

Plaintiff ultimately withdrew the request for informal conference after the parties reached an agreement with regard to plaintiff's entitlement to a refund. The only disagreement left at the time was, as it is now, when interest began to accrue on the refund amount. Defendant calculated the amount of interest due by using the date of the written request for informal conference—July 27, 2020—as the date for triggering the accrual of interest under MCL 205.30(3). Plaintiff disagreed and asserted that interest should have begun to accrue on October 17, 2018, when it submitted the Holdings Memo. [Bracketed material in original.]

Plaintiff initiated this action in the Court of Claims, alleging that the Holdings Memo constituted a claim for a refund providing the requisite notice to defendant for purposes of MCL 205.30 and that plaintiff was therefore entitled to interest on its tax refund calculated from the date 45 days after plaintiff submitted the Holdings Memo to defendant.

Accordingly, the Holdings Memo is of central importance to resolution of this case. The October 17, 2018 email from Lorenz to Van Buskirk, which has been referred to as the Holdings Memo, provided in full as follows:

Elaine,

Hello. As discussed, I believe we should have included U.S. Steel Holdings Inc. in our 2013 Michigan CIT Unitary Business Group.

U.S. Steel Holdings Inc is a Delaware Corporation owned 100% by U.S. Steel and is a member of the United States Steel Corporation (U.S. Steel ) consolidated group for U.S. income tax purposes.
U.S. Steel Holdings Inc.is a domestic corporation, and therefore a United States person according to IRC section 7701(a)(30)(C). It also meets the control and relationship tests as set forth by Michigan. However, the issue is whether it is considered a foreign operating entity.

> A foreign operating entity is defined by statute in Michigan Compiled Laws (MCL) 206.607(3) as a United States corporation that satisfies each of the following:
>
> > (a) Would otherwise be a part of a unitary business group that has at least 1 corporation included in the unitary business group that is taxable in this state
> >
> > (b) Has substantial operations outside the United States, the District of Columbia, any territory or possession of the United States except for the Commonwealth of Puerto Rico, or a political subdivision of any of the foregoing
> >
> > (c) At least 80% of its income is active foreign business income as defined in section 861(c)(l)(B) of the internal revenue code.

> U.S. Steel Holdings is not a foreign operating entity because it does not meet subsection (c) of MCL 206.607(3). Less than 80% of its income in 2013 is attributable to active foreign business income derived from sources outside of the United States.
>
> The internal revenue code's definition of "active foreign business income" means gross income which is (i) derived from sources outside the United States, and (ii) is attributable to the active conduct of a trade or business in a foreign country or possession of the United States by the individual or corporation (or by a subsidiary). Therefore, U.S. Steel Holdings Inc. is not a foreign operating entity and therefore should be included in U.S. Steel's UBG for purposes of the Michigan 2013 CIT.

> Please let me know what you think,

> Thank you,
> Mashawn

In response to plaintiff's interrogatories, defendant indicated that there was a telephone call on October 18, 2018, between Lorenz and Van Buskirk, during which they "[d]iscussed U.S. Steel Holdings for 2013; requested supporting information."

Plaintiff eventually moved in the Court of Claims for summary disposition under MCR 2.116(C)(10), arguing that there was no genuine issue of material fact that it filed its claim for a refund on October 17, 2018, by sending the Holdings Memo to defendant. According to plaintiff, the Holdings Memo "assert[ed] that the losses of U.S. Steel Holdings ('Holdings') should be included in U.S. Steel's unitary taxes for the 2013 to 2016 period (resulting in a significant tax refund)." Plaintiff argued that it was not required to have specifically used the word "refund" in its request and further explained:

> The sole reason for U.S. Steel and Treasury to even be discussing Holdings' treatment for 2013-2016 was to decide whether Holdings' losses were part of U.S. Steel's Michigan tax base for the Years at Issue, reducing U.S. Steel's tax liability. U.S. Steel and Treasury were not discussing the issue as a hypothetical. They were discussing the issue in the context of an audit examining U.S. Steel's Michigan income tax liability to determine whether U.S. Steel deserved a refund by including Holdings' losses, thereby reducing that liability.

In response, defendant argued that it was entitled to summary disposition under MCR 2.116(I)(2). Defendant argued that plaintiff did not make a claim for a refund until July 27, 2020, when plaintiff submitted its informal conference request explicitly stating its belief that it was entitled to a tax refund of a specific amount. Defendant further argued that the Holdings Memo merely explained plaintiff's legal position regarding including an additional subsidiary in its UBG and did not claim that plaintiff was entitled to a refund of any tax paid that was not due. Defendant maintained that plaintiff was required to make a written demand for a refund and failed to do so before July 27, 2020. Additionally, defendant argued that a written demand was nonetheless required to trigger the 45-day waiting period for accrual of interest even if plaintiff had made oral

communications about seeking a refund or defendant had actual knowledge of plaintiff's intent to seek a refund.

Defendant attached Van Buskirk's affidavit in which she averred that she had telephone conversations with Lorenz on October 17, 2018, and October 18, 2018. Van Buskirk averred that during these conversations, she and Lorenz discussed the status of the audit, the inclusion of U.S. Steel Holdings in plaintiff's UBG for the 2013 tax year, and the need for supporting information. However, Van Buskirk averred that she had "no recollection of Mashawn Lorenz communicating during these phone calls a demand for refund related to the inclusion of U.S. Steel Holdings in the 2013 Corporate Income Tax unitary return." Van Buskirk further averred that her audit diary notes did not reflect that Lorenz or anyone else acting on plaintiff's behalf "demanded a refund during our phone conversations." According to Van Buskirk,

> [h]ad Mashawn Lorenz communicated a demand for a refund during our telephone conversations, I would have documented that such a demand was made because it would have been an unusual request given the stage of the audit in October 2018.

Defendant also attached plaintiff's letter to defendant, dated July 27, 2020, in which plaintiff made a written request for an informal conference regarding defendant's May 28, 2020 final determination regarding the audit. This letter stated in relevant part as follows:

> Pursuant to Section MCL 205.21 of the Revenue Act, please accept this letter as United States Steel Corporation's ("Taxpayer") timely filed written request for informal conference with the Michigan Department of Treasury ("the Department") to appeal the Final Audit Determination dated May 28, 2020 ("the FAD") in which adjustments to Taxpayer's unitary business group and income proposed to the Department's auditors during the audit ("the Adjustments") were disallowed for tax years ended December 31, 2013 through December 31, 2016 and not incorporated in the FAD.
>
> Taxpayer's Adjustments seek to include a loss incurred by U.S. Holdings, Inc. in the tax year ended December 31, 2013 from the disposition of stock in a foreign affiliate ("the Loss") in Taxpayer's business income because U.S. Holdings Inc. is a member of the Taxpayer's unitary business group and the loss is a component of the Taxpayer's Federal taxable income as defined by 26 U.S.C.S. § 63.

Plaintiff's written request for an informal conference also stated, "Taxpayer specifically requests a refund in the amount of $4,525,796, plus any applicable interest . . . ."

In reply to defendant's summary disposition pleading, plaintiff argued that defendant was aware through conversations between Lorenz and Van Buskirk that the Holdings Memo constituted an assertion of the right to a refund. Plaintiff maintained that there would have been no reason for submitting the Holdings Memo during the audit other than asserting that the inclusion of U.S. Steel Holdings within plaintiff's UBG would result in a tax refund.

Plaintiff attached the affidavit of Lorenz, in which she averred in pertinent part as follows:

-5-

8. In the time period of August through October 2018, US Steel advised Ashley Donnenwerth[1] verbally that it had mistakenly omitted Holdings from its Michigan unitary return for the tax years at issue.

9. In early October 2018, I prepared a memorandum ("the Holdings Memo") directed to the Michigan Department of Treasury discussing why the loss incurred by US Holdings Inc. in the tax year ended December 31, 2013 from the disposition of stock in a foreign affiliate ("the Loss") should be including in US Steel's business income because US Holdings Inc. is a member of US Steel's unitary business group and the loss is a component of US Steel's Federal taxable income as defined by 26 USCS § 63.

10. The Holdings Memo was provided to Elaine VanBuskirk via email on October 17, 2018.

11. On October 18, 2018, I had a phone conversion with Elaine Van Buskirk during which we discussed the foreign entity status of U.S. Steel Holdings for the 2013 tax period and the Holdings Memo I had provided to Elaine on October 17, 2018.

12. During my October 18, 2018 conversation with Elaine Van Buskirk I asked her if United States Steel needed to file an amended return to request the refund due U.S. Steel as a result of adding U.S. Steel Holdings to the unitary business group for the tax periods of January 1, 2013 through December 31, 2016 as outlined in the Holdings Memo provided to her on October 17, 2018. Her response was that no amended return needed to be filed and any adjustment would be handled through the Audit.

13. It was clear to me during my October 18, 2018 conversation with Elaine Van Buskirk that she understood that the Holdings Memo provided to her on October 17, 2018 put her and the Michigan Department of Treasury on notice that U.S. Steel was asserting its right to a refund in connection with adding U.S. Steel Holdings to the unitary business group for the tax periods of January 1, 2013 through December 31, 2016.

The Court of Claims denied plaintiff's motion for summary disposition and instead granted summary disposition in favor of defendant. The court explained its analysis in its opinion and order as follows:

There is no dispute that plaintiff was entitled to a refund of approximately $4,743,285.75. The issue in this case concerns when plaintiff first requested a refund. Under MCL 205.30(1), defendant is required to pay interest to taxpayers who are owed refunds. For a taxpayer to obtain a refund and interest, MCL 205.30(2) directs that a taxpayer who paid a tax that the taxpayer claims is not owed

---

[1] Ashley Donnenwerth was one of defendant's auditors.

"may petition the department for refund of the amount paid." Interest on refunds "shall be added to the refund commencing 45 days after the claim is filed or 45 days after the date established by law for the filing of the return, whichever is later." MCL 205.30(3). In summary, to trigger the accrual of interest, a taxpayer must: "(1) pay the disputed tax, (2) make a 'claim' or 'petition' for a refund, and (3) 'file' the claim or petition." *Ford Motor Co v Dep't of Treasury*, 496 Mich 382, 385-386; 852 NW2d 786 (2014).

Plaintiff argues that it filed its claim for refund when it submitted the Holdings Memo to defendant on October 17, 2018. Thus, the Court turns to caselaw interpreting and applying MCL 205.30(3). In *Ford Motor Co*, 496 Mich at 386, the Supreme Court explained that a claim or petition need not take a specific form; however, "it must clearly demand, request, or assert a right to a refund of tax payments made to the Department of Treasury that the taxpayer asserts are not due." For instance, a taxpayer can satisfy the statutory requirement by sending a letter to defendant, so "long as the letter included the information necessary to constitute a definite demand for, request for, or assertion of a right to a refund." *Id*. at 394. The taxpayer need not use any magic words such as "refund" or "claim," as long as the demand is clear. *Id*. at 401 n 8. It is not enough for a taxpayer to imply that the taxpayer may seek a refund; rather, the taxpayer must "*explicitly* demand, request, or assert a right to a refund." *Id*. at 398 (emphasis added). Nor does the triggering of interest accrual occur when the Department of Treasury is merely aware that the taxpayer is entitled to a refund. *Id*. at 398. The taxpayer must make an affirmative request for a refund. *Id*. at 399-400.

The claim or petition must be "filed" with defendant as well. A taxpayer "files" a refund claim when it submits "the claim to [ ] Treasury in a manner sufficient to provide [ ] Treasury with adequate notice of the taxpayer's claim." *Id*. at 386. Once again, while the request need not be made on a specific form, the taxpayer's claim must be made in writing to satisfy MCL 205.30. *Muldavin v Dep't of Treasury*, 184 Mich App 222, 226-227; 457 NW2d 50 (1990). See also *Ford Motor Co*, 496 Mich at 392.

In this case, the record shows that the Holdings Memo did not trigger the accrual of interest. The Holdings Memo stated plaintiff's position on whether U.S. Steel Holdings was a "foreign operating entity" under MCL 206.607(3). Then, the email concludes that U.S. Steel Holdings was not a foreign operating entity. While not stated, the implication from this conclusion would be that U.S. Steel Holdings should have been included within plaintiff's UBG. And again, while not stated, the implication from U.S. Steel Holding's inclusion in the UBG would be that plaintiff's tax liability would be lower. And finally, while not stated, the implication from plaintiff's tax liability being lower is that plaintiff overpaid its tax liability. These implications, taken together, would entitle plaintiff to a refund.

But here the implications were left unsaid. However logical the conclusion might have been that plaintiff was likely to ask for a refund, "the statutory language nevertheless requires more of a taxpayer: the taxpayer must make a claim or petition

for a refund . . . [and must] explicitly demand, request, or assert a right to a refund." *Ford Motor Co*, 496 Mich at 398. The Holdings Memo lacks any clear expression that plaintiff believed it was entitled to a refund. While the memo expressed a clear difference of opinion as to the treatment of U.S. Steel Holdings, plaintiff never made any type of demand for a refund, what the refund would be, or why plaintiff believed it was entitled to the refund.

Defendant takes the position—and has calculated interest accordingly—that the first time plaintiff made a clear, express claim for refund was in the request for informal conference in July 2020. The Court agrees with defendant. On the record produced by the parties, the informal-conference request was the first time plaintiff stated, in writing, that it overpaid its tax liability for the period in issue. The informal-conference letter was also the first time that plaintiff stated that the inclusion of U.S. Steel Holdings in the UBG meant that plaintiff was entitled to a refund of tax previously paid. The informal-conference request contained an express demand for a refund. Plaintiff's express demand in the informal-conference request stands in stark contrast to the more tentative language in the Holdings Memo.

Lastly, the Court rejects plaintiff's alternative position, which is that an October 2018 telephone call between Lorenz and Van Buskirk was sufficient to demand a refund and satisfy MCL 205.30. MCL 205.30 requires that a claim for refund be in writing; an oral communication is not sufficient. See *Ford Motor Co*, 496 Mich at 392; *Muldavin*, 184 Mich App at 226-227. [Alterations in original.]

This appeal followed.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition is proper under MCR 2.116(C)(10) when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the nonmoving party and grants summary disposition only if the evidence fails to establish a genuine issue regarding any material fact." *Woodring v Phoenix Ins Co*, 325 Mich App 108, 113; 923 NW2d 607 (2018). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (quotation marks and citation omitted). "If it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." MCR 2.116(I)(2). "The interpretation and application of statutes, rules, and legal doctrines is reviewed de novo." *Woodring*, 325 Mich App at 113-114.

## III. ANALYSIS

MCL 205.30 provides in relevant part:

(1) The department shall credit or refund an overpayment of taxes; taxes, penalties, and interest erroneously assessed and collected; and taxes, penalties, and interest that are found unjustly assessed, excessive in amount, or wrongfully collected with interest at the rate calculated under section 23 for deficiencies in tax payments.

(2) A taxpayer who paid a tax that the taxpayer claims is not due may petition the department for refund of the amount paid within the time period specified as the statute of limitations in section 27a. If a tax return reflects an overpayment or credits in excess of the tax, the declaration of that fact on the return constitutes a claim for refund. If the department agrees the claim is valid, the amount of overpayment, penalties, and interest shall be first applied to any known liability as provided in section 30a, and the excess, if any, shall be refunded to the taxpayer or credited, at the taxpayer's request, against any current or subsequent tax liability. Except claims for refunds, other than those made under part 1 of the income tax act of 1967, 1967 PA 281, MCL 206.1 to 206.532, that have not been approved, denied, or adjusted within 1 year of the date received may be treated as denied at the election of the taxpayer, and may be appealed by the taxpayer in accordance with section 22.

(3) The department shall certify a refund to the state disbursing authority who shall pay the amount out of the proceeds of the tax in accordance with the accounting laws of the state. *Interest at the rate calculated under section 23 for deficiencies in tax payments regarding those refunds shall be added to the refund commencing 45 days after the claim is filed or 45 days after the date established by law for the filing of the return, whichever is later.* Interest on refunds intercepted and applied as provided in section 30a shall cease as of the date of interception. Refunds for amounts of less than $1.00 shall not be paid. [Emphasis added.]

In *Ford Motor Co v Treasury Dep't*, 496 Mich 382, 385; 852 NW2d 786 (2014), our Supreme Court specifically addressed the issue of determining "what actions a taxpayer must take under MCL 205.30 of the Revenue Act to trigger the accrual of interest on a tax refund." The Court summarized its holding as follows:

We hold that in order to trigger the accrual of interest, the plain language of the statute requires a taxpayer to (1) pay the disputed tax, (2) make a "claim" or "petition" for a refund, and (3) "file" the claim or petition. Although a "claim" or "petition" need not take any specific form, it must clearly demand, request, or assert a right to a refund of tax payments made to the Department of Treasury that the taxpayer asserts are not due. Additionally, in order to "file" the claim or petition, a taxpayer must submit the claim to the Treasury in a manner sufficient to provide the Treasury with adequate notice of the taxpayer's claim. [*Id*. at 385-386.]

Here, the parties do not dispute that plaintiff paid the tax and was subsequently entitled to a tax refund. The first requirement under the statute is therefore not at issue. The sole issue on appeal concerns the date on which plaintiff made a claim or petition for a refund and filed that claim or petition with defendant. Plaintiff argues that the October 17, 2018 Holdings Memo, *along*

*with the contemporaneous related oral communications with defendant*, satisfies the remaining two requirements to trigger the accrual of interest.

In *Ford*, the Supreme Court held that "because a taxpayer can demand, request, or assert a right to a refund by a multitude of methods, we conclude that the taxpayer's 'claim' or 'petition' need not take any specific form, so long as it clearly requests or demands that the Treasury return tax payments that the taxpayer asserts were not due." *Id*. at 394. In this case, the Holdings Memo does not contain any request or demand for tax money to be refunded. The email is solely focused on arguing that U.S. Steel Holdings should be included in plaintiff's UBG. However, plaintiff essentially argues that when the Holdings Memo is considered in the context of other information allegedly known to defendant as a result of the audit and other contemporaneous communications between the parties, the Holdings Memo can only be understood as a request for a tax refund.

Even accepting as true plaintiff's contention that defendant was aware that plaintiff's purpose in disputing the exclusion of the entity U.S. Steel Holdings from plaintiff's UBG was to achieve a position from which plaintiff could seek a tax refund, our Supreme Court has already rejected this type of argument. In *Ford*, our Supreme Court stated:

> Next, we must determine whether plaintiff made a "claim" or "petition" for a refund. Plaintiff argues that it made a claim or petition for refund on August 3, 2005, when it responded to the Treasury's Audit Determination Letter by checking the box indicating that plaintiff "disagrees with this determination." Specifically, plaintiff contends that its expression of disagreement on August 3, 2005, coupled with the other information known to the Treasury as a result of the audit process, constitutes a claim or petition for refund.[6] Thus, the question is whether, when considered in context with the information known to the Treasury, expressing disagreement with the Treasury's tax assessment is sufficient to constitute a claim or petition for refund of the money associated with that determination.
>
> ---
>
> [6] Plaintiff argues that the Treasury knew that plaintiff (1) had filed returns stating the amount of tax plaintiff believed was due, (2) did not treat the VEBA [Voluntary Employees' Beneficiary Association] contributions as taxable, (3) disagreed with the Treasury's conclusion that the VEBA contributions were taxable, and (4) had made previous payments sufficient to cover the disputed tax liability. Plaintiff also notes that, in a September 19, 2005 letter, the Treasury acknowledged that it was aware of plaintiff's disagreement with the tax assessment and argument regarding the VEBA contributions and encouraged plaintiff to pursue legal remedies.
>
> ---
>
> To begin with, there is no dispute that plaintiff made clear its *disagreement* with the Treasury's audit determination regarding the taxability of the VEBA contributions and that subsequent court proceedings eventually proved plaintiff correct. Additionally, there may be some appeal to the seemingly logical conclusion that a taxpayer who expresses disagreement with a tax assessment is also likely to request a refund of funds paid to satisfy the disputed assessment. However logical that conclusion may appear, the statutory language nevertheless requires more of a taxpayer: the taxpayer must make a claim or petition for a refund, which, as we previously established, requires the taxpayer to explicitly demand,

request, or assert a right to a refund.  Although expressing disagreement with a tax assessment may *imply* that the taxpayer may seek a refund, an expression of disagreement alone is not a demand for, request for, or assertion of a right to a refund.

Indeed, although we approached the issue from the opposite direction in [*NSK Corp. v. Dep't of Treasury*, 481 Mich 884, 748 NW2d 884 (2008),] because in that case the Treasury determined that the taxpayer was entitled to a refund, we nevertheless reached the same conclusion.  Specifically, we held that the 45–day waiting period before interest begins to accrue on a tax refund is not triggered merely because the Treasury is aware that the taxpayer is entitled to a refund.  Although it is seemingly logical that a taxpayer entitled to a refund will indeed request that refund, we nevertheless concluded that the statutory language requires something more: the taxpayer must make a "separate request" for the refund.  *NSK Corp.*, 481 Mich at 884.  Therefore, if the Treasury's actual knowledge that a taxpayer is entitled to a refund is not sufficient to trigger the 45–day waiting period under MCL 205.30(3), a taxpayer's mere expression of disagreement with a tax assessment cannot constitute a claim or petition for a refund sufficient to trigger the interest waiting period.  Rather, the taxpayer must make a "separate request" that clearly demands, requests, or asserts a right to a refund.  Because plaintiff's August 3, 2005 response to the Audit Determination Letter did not make such a demand, request, or assertion, it was not a "claim" for a refund under MCL 205.30.  [*Ford*, 496 Mich at 397-399.]

The only evidence of a clear demand, request, or assertion of a right to a tax refund made to defendant, see *id*. at 386, that plaintiff has cited is evidence that Lorenz orally requested a refund in her discussions with Van Buskirk.  However, under MCL 205.30, the claim or petition for a tax refund must be made in writing.  See *Muldavin v Dep't of Treasury*, 184 Mich App 222, 224, 226-227; 457 NW2d 50 (1990)[2] (concluding that MCL 205.30 required a written request for a refund); see also *Ford*, 496 Mich at 394-395 (defining "filed" for purposes of MCL 205.30(3) to "include: (1) to initiate (as a legal action) through proper formal procedure, (2) to submit documents necessary to initiate a legal proceeding, (3) [t]o enter (a legal document, for example) on public record or official record, and (4) [t]o apply: *file for a job*") (quotation marks and citations omitted; alterations in original).

It is true that plaintiff was not required to use specific "magic words," such as "refund," "claim," or "petition" for the Holdings Memo to constitute a proper claim or petition for a tax refund under MCL 205.30.  See *Ford*, 496 Mich at 401 n 8.  However, contrary to plaintiff's characterizations of the Holdings Memo in its appellate briefing, this email did not contain any reference to alleged losses suffered by U.S. Steel Holdings during the relevant tax years or any assertion that including U.S. Steel Holdings in plaintiff's UBG would create an overpayment that

---

[2] This opinion was issued before November 1, 1990.  Although this Court may not be strictly bound to follow published decisions issued before November 1, 1990, this Court typically treats such uncontradicted opinions as precedential authority.  *Woodring*, 325 Mich App at 114-115.

plaintiff could claim as a tax refund.  The Holdings Memo is thus insufficiently definite and specific to constitute an explicit demand or request for a tax refund without resorting to reliance on the implications of expressing disagreement with defendant's treatment of this particular entity, which is not a proper manner of requesting a refund under the statute.  *Id*. at 397-399.

Accordingly, the Court of Claims did not err by denying plaintiff's motion for summary disposition and granting summary disposition in favor of defendant.

Affirmed.


/s/ Michael J. Riordan
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra